JAMES H. BONNEY, and another, *vs.* CHESTER GREENWOOD.

Franklin. Opinion March 24, 1902.

*Easement. Destruction of Servient Estate. Estoppel. Party-Wall.*

It is among the essential qualities of every easement that there are two distinct tenements or estates, the dominant to which the right belongs, and the servient upon which the obligation is imposed. Hence an easement, properly so-called, may survive the destruction of a part of the servient estate when there is anything remaining upon which the dominant estate may operate.

The right to the use and enjoyment of a privilege in a particular building of another, which does not involve any interest in the soil apart from the building, is extinguished by the destruction of the building, for the obvious reason that nothing remains upon which it can operate.

A party-wall is one without openings for windows.

In an action for destruction of easements in the hall and stairway of defendant's building and a partition wall and obstructing a passage-way on land of the defendant, it appeared that after the destruction of the buildings and wall by fire in 1886, new buildings, erected pursuant to mutual covenants made in 1887, were so constructed that all parts of each could be occupied and enjoyed independently of the other; and that one of plaintiffs was a party to the said covenants and the other plaintiff, Metcalf, had actual notice of them and accepted from defendant his proportional part of the cost of the wall, and allowed defendant to erect his building, with a solid brick wall, across the five foot strip in question,

*Held;* that the conduct of both parties was wholly incompatible with the continued existence of the easement claimed.

*Held;* that plaintiff Metcalf was silent when he should have spoken, and he must be deemed to be equitably estopped to assert any right of easement in the hall and stairway of the defendant's building and the passage-way on his land.

Openings for windows made by one party in an existing party-wall in violation of the rights of the other, may lawfully be closed by him, provided no unnecessary injury is thereby done to the adverse party.

On report.    Judgment for defendant.

Case, for destroying easements claimed by plaintiffs in a building and party-wall and for obstructing a passage-way.

The first count in the declaration was as follows:—

In a plea of the case, for that the plaintiffs, on the tenth day of April, A. D. 1899, and long before had, and continually afterwards hitherto hath been, and now are seized of a certain store and lot situated in Farmington Center village in said Farmington aforesaid, and bounded and described as follows, to wit:

"Beginning on the south side of Broadway at the north-west corner of what was formerly Joel Phinney's store lot, running southerly on Joel Phinney's westerly line eighty-two feet and continuing in the same direction eighteen feet to stakes and stones; thence westerly parallel with said Broadway about twenty-two and one-half feet to stakes and stones; thence northerly to a given point six inches east of the westerly side of the westerly wall of the Arcade, or Post-office, continuing through the westerly wall (regarding the center of said wall as the dividing line) to Broadway, it being one hundred feet from the south-west corner; thence easterly on the southerly line of said Broadway about twenty-two and one-half feet to the place of beginning, together with the building thereon," in their demesne as of fee; and whereas the said plaintiffs at said Farmington on the said tenth day of April, A. D. 1899, and long before were, and ever since have been, and still are lawfully possessed of, and in the messuage aforesaid, and, by reason thereof for all the time aforesaid of right had and still ought to have a certain right of way to pass and repass on foot or otherwise from the common highway or street called Broadway in Farmington Center village in Farmington

aforesaid, through and over the land which is now the said defendant's and being the lot lying westerly of the plaintiffs' said lot above described, and of five feet in width (more or less) and said right of way running North thirty-five feet more or less to Broadway, so-called, and said plaintiffs further had forever the right to the free and unobstructed use of the stairway leading to the second story of a building formerly built by one Perkins on the lot now owned by defendant, and being the lot next westerly of your said plaintiffs' lot and building and the free and unobstructed use of the hall in the second story of said building, and said stairway to be not less than three feet in the clear and the hall not less than five feet in the clear, the center of the stairway to be not more than twenty feet from the west wall of plaintiff's said building upon their lot aforesaid and the said hall to run east and west the entire width of the building aforesaid and the said hall to be a continuation of the hall in the building then on the lot of said plaintiffs described as aforesaid, and that said hall and stairway were to be well built and finished and thoroughly lighted by day by large and modern windows over the door leading to the stairway in the west end of the hall and said light from the windows never to be obstructed and said stairway and hall to be kept in good repair by defendant forever, and the right to the free use forever of the water in the well located on the lot of defendant aforesaid with right to enter said well with three pipes for purposes of drawing water and free access to said well and right to make any necessary repairs on said well, pipes and pumps forever, and that the roof of the said building at its highest point adjoining the west wall of plaintiffs' said building should be at least six inches below the eaves of plaintiffs' said building and that said building should go no farther than the plaintiffs' said lot.

Nevertheless the said defendant, well knowing the premises, but contriving and intending to hinder, and as much as in him lay, to deprive the said plaintiffs of the use of their said way and rights in the building of said defendant upon land of said defendant next westerly of and adjoining the lot of plaintiffs aforesaid (the said building erected by said Perkins having been destroyed by fire) on the tenth day of April, A. D. 1899, erected a certain other building

on his said lot and over said right of way five feet in width and refused your said plaintiffs any rights in the stairway of said new building, and did not build a hall in said building and has wholly deprived the plaintiffs of said right of way and of the use of the stairway in the building on defendant's said land, and the hall in the second story of the same, and the light from the windows which was never to be obstructed, and the use of said well of water; and said defendant has ever since continued said building erected by him, so that the said plaintiffs hath ever since been totally hindered and deprived of their said way aforesaid, and right to the free and unobstructed use of the stairway leading to the second story of the building erected by said defendant, and the free and unobstructed use of the hall in the second story of the building, and said stairway and hall in said building, and the light from said hall from windows to be built as aforesaid over the doorway leading to the hall and that said light as aforesaid has been obstructed by said building erected by said defendant as aforesaid, and the well of water as aforesaid and the said new building at its highest point is more than six inches higher than the old building and extends back further than the old building as aforesaid and all from said tenth day of April to the present time.

The second count in the declaration was for stopping up the windows in the party-wall.

*J. C. Holman,* for plaintiffs.

Counsel argued, among other things, that the destruction of the partition wall cannot in any way affect plaintiffs' right of way in the five-foot strip.

*F. W. Butler,* for defendant.

Sitting : Wiswell, C. J., Emery, Whitehouse, Strout, Peabody, JJ.

Whitehouse, J.   This is an action on the case to recover damages for the destruction of an easement, claimed by the plaintiffs in a stairway and hallway of the defendant's building; and also for the

obstruction of a passage-way five feet in width on the land of the defendant.

In 1884, F. C. Perkins was the owner of two adjoining lots of land situated on the southerly side of Broadway in the village of Farmington. The easterly lot, now owned by the plaintiffs, is $22\frac{1}{2}$ feet in width on the street, and the westerly lot, now owned by the defendant, is 40 feet in width. There were buildings standing on the easterly lot, but none on the westerly lot. March 31st, 1884, Perkins conveyed the easterly lot to C. W. Keyes and A. T. Tuck, by separate deeds, conveying to each an undivided half, making the center of the westerly wall of the Arcade or post-office, then standing thereon, the dividing line between this lot and the vacant lot on the west side owned by Perkins as above stated. The deeds to Keyes and Tuck contained the following clause: "Said Keyes [Tuck] to have forever the right to the free and unobstructed use of the stair-way leading to the second story of the proposed building to be built by said Perkins adjoining the post-office building now so-called, and the hall in the second story of the proposed block, the stairway to be not less than three feet in the clear and the hall not less than five feet in the clear, the center of the stairway to be not more than twenty feet from the west wall of the said post-office building or block, and said hall to run east and west the entire width of the pro-posed building or block in which said stairway is to be located and a continuation of the hall now in the upper story of the post-office building, both stairway and hall to be well built and finished and thoroughly lighted by day by large and now modern windows over the door leading to the stairway and in the west end of the hall in the Perkins block, and the light from these windows never to be obstructed," etc. The plaintiffs derive title from Keyes and Tuck, through several mesne conveyances, all of which purport to convey the rights and privileges described in the covenants found in the deeds to Keyes and Tuck as above stated.

It is not in controversy, that very soon thereafter Perkins erected a building upon his vacant lot as proposed in those deeds, and that the owners of the plaintiff block enjoyed the use of the stairway and hall therein, according to the stipulation in the deeds, until October 22,.

1886, when the buildings on both lots, including the partition wall, were destroyed by fire. Thereupon, on the twelfth day of the next May, 1887, the owners of the plaintiff lot, namely, the plaintiff Bonney, and A. S. Butterfield, the grantor of the other plaintiff Metcalf, entered into an agreement under seal with F. C. Perkins for the construction and maintenance of a new partition wall between the lots in question, the material provisions of which are as follows :

"The said Almas S. Butterfield and James H. Bonney do hereby covenant and agree to erect a partition wall of brick with a proper foundation under the same of stone, one-half of said wall to set on the lot of said Butterfield & Bonney on Broadway in Farmington village corporation occupied by C. W. Keyes as the Chronicle office at the time of the fire which destroyed the same October 22d, 1886, and the other half on the lot of said Perkins which was occupied by E. G. Blake as a jewelry store at the time of said fire.

"Said wall is to be erected at the expense of the said Butterfield & Bonney, and whenever said Perkins shall erect a building on his lot aforesaid he shall have the right to use said wall as the east wall of his building which he shall erect, and shall become the owner of the west half of said wall by paying to the said Butterfield & Bonney one-half the costs, at the time said wall is used by said Perkins, of a similar brick wall similarly made and constructed as the brick wall herein described.

"And it is further agreed that neither party hereto or any person shall project timbers or finish into said wall more than four inches in depth.

"And the said Frederick C. Perkins hereby agrees to allow and hereby gives permission for the erection of said wall on his said lot as above described, and hereby further agrees that whenever he shall erect a building on his said lot he will pay to the said Almas S. Butterfield and James H. Bonney one-half the costs at the time said wall is first used by said Perkins of a similar brick wall similarly made and constructed as the brick wall herein described and shall thereby become the owner of the west half of said wall.

"And it is hereby agreed by the parties hereto that neither party hereto shall remove or destroy said wall or allow it to be removed or

destroyed except by the act of God, without the consent and permission of the other party hereto."

This agreement was recorded in the registry of deeds March 9, 1888.

In pursuance of this agreement another building with a new partition wall was erected by Butterfield & Bonney, the owners of the plaintiff block, and subsequently, in the year 1897, Butterfield conveyed his undivided-half interest in the lot, building and wall to the plaintiff Metcalf. In 1898 the devisees of Perkins conveyed the adjoining lot in question to the defendant who erected the present building thereon in 1899, and paid to the plaintiffs one-half of the cost of the new partition wall, according to the agreement.

The plaintiffs now contend that they have the same rights of passage through the stairway and hall of the new building that the owners of the plaintiff block had in the original building on the Perkins lot which was destroyed by fire.

The defendant contends that by the destruction of both buildings all easements in the Perkins building were extinguished, or if not extinguished, that they have been lost by voluntary abandonment and acts incompatible with their continued existence.

An easement may be concisely defined as "a privilege without profit which one has for the benefit of his land in the land of another." Washburn on Easements, 2; Jones on Easements, 1. It is among the essential qualities of every easement that there are two distinct tenements or estates, the dominant to which the right belongs, and the servient upon which the obligation is imposed. 10 Am. and Eng. Enc. of Law, 401. Hence an easement, properly so-called, or right appurtenant to one tenement to the enjoyment of some privilege in neighboring land, may survive the destruction of a part of the servient estate when there is anything remaining upon which the dominant estate may operate. But the right to the use and enjoyment of a privilege in a particular building of another, which does not involve any interest in the soil apart from the building, is extinguished by the destruction of the building, for the obvious reason that nothing remains upon which it can operate. Jones on Easements, 838, 839. In *Shirley* v. *Crabb*, 138 Ind. 200 (46 Am.

St. Rep. 376), the owner of a building containing a store conveyed to the owner of an adjoining store the right to use a stairway in the former, in common with the grantor, as a means of access to the rooms in the upper part of both stores. There was a party-wall between the two buildings. Subsequently the building in which the stairway in question existed was wholly destroyed by fire; and it was held that the easement in the stairway thereupon ceased. In the opinion the court said: "We feel entirely certain that the reservation was not intended to create an interest in the soil; and if it possessed the quality of an easement, in that it became an interest in real estate, it was only to the extent of affording the use of the stairway and hall in the building as it existed, and independently of any right to or interest in the soil. If this was the extent of the interest, it follows that the destruction of the building destroyed the right as effectually as if the interest had been in the soil and the floods had carried away the soil; nothing would remain upon which the right could operate. A new structure would not recreate the right, for such right had been destroyed, and not simply suspended, as would probably have been the case if the right had attached to the soil."

It is further provided in the Perkins deeds of the plaintiff lot that "the west wall of the post-office block or building shall forever remain as a partition wall between said post-office building and any building that said Perkins or his heirs or assigns may join thereto." But it is equally well settled, in the absence of any agreement to the contrary, that the destruction of a party-wall destroys an easement therein created by building the wall along the dividing line of two lots and conveying one or both of the buildings by deeds in which the line is described as running through the center of the party-wall. *Pierce* v. *Dyer*, 109, Mass. 374, 12 Am. Rep. 716; *Heartt* v. *Kruger*, 121 N. Y. 386, 18 Am. St. Rep. 829, 9 L. R. A. 135; Jones on Easements, 840, and cases cited. The progressive development of social and industrial life in our cities and villages is constantly demanding buildings and structures of different size and character from those required in the generation gone before; and a division wall adapted to necessities of one proprietor, may soon become inapplicable to the purposes and needs of the other.

In the case at bar, furthermore, it is manifest that after the fire in 1886, the parties interested acted upon the assumption that all easements in the building and partition wall in question had been extinguished by the destruction of both buildings.

It appears from the evidence that in 1884, at the date of the Perkins deeds of the plaintiff lot, the entrance to the second story of the Arcade or post-office building, was then up a flight of stairs in the west side of the building over the vacant lot, then owned by Perkins, and now owned by the defendant. But this stairway was removed in order to make way for the original building soon after erected on this lot by Perkins. In accordance with the agreements in Perkins' deeds to Keyes and Tuck in 1884, this building covered the entire width of the vacant lot; the existing west wall of the post-office block on the plaintiff lot became the east wall of the Perkins building and the partition wall between the two; and in pursuance of the further stipulation in the deeds, provision was made for access to the upper story of the post-office building by means of the stairway in the middle of the Perkins building and the hallway therein leading through the partition wall.

It also appears that in May 1887, following the fire in October 1886, the respective owners of these adjoining lots entered into a contract of the tenor above given for the construction of a "partition wall of brick" between the buildings to be erected thereon. In making this contract the parties must be presumed to have employed the words "partition wall of brick" with the meaning which they have acquired by usage; and "by usage the words 'party-wall' and 'partition wall' have come to mean a solid wall. Various reasons of inconvenience or peril have been assigned for the doctrine, but they are all referable, we think, to the general doctrine that the easement is only a limited one, and is not to be extended so as to include rights and privileges not belonging to the character of a wall which is to be owned in common, and in which the right of each owner are equal." *Normille* v. *Gill*, 159 Mass. 427, 38 Am. St. Rep. 441, and cases cited. In *Volmer's Appeal*, 61 Pa. St. 118, the court said: "From this review of the doctrines applicable to party-walls, it is clear that it must be a solid wall, without openings, of brick or stone or other

incombustible material." See also *Trante* v. *White*, 46 N. J. Eq. 437; Jones on Easements, § 687. Such was undoubtedly the understanding of the parties to the contract in this case; for the owners of the plaintiff lot thereupon actually constructed a solid "partition wall of brick" without any openings for windows, and erected a block of stores on their lot with means of access to the upper story by a stairway between the two stores, wholly on their own land. In harmony with this understanding the defendant subsequently erected a building on his lot without any hallway leading to the plaintiff's block, using the "partition wall of brick" for his east wall, and paying the plaintiffs therefor one-half of the cost of such a wall according to the stipulation in the contract, as before stated. Both buildings were thus constructed in such a manner that all parts of each could be occupied and enjoyed independently of the other. The inference from these facts is irresistible that there was then a mutual understanding that the right of access to their building, which the owners of the plaintiff lot once had through the former building on the defendant's lot, had been extinguished. The conduct of both parties was wholly incompatible with the continued existence of such an easement. The presumption that it was terminated by the destruction of the buildings was confirmed by their subsequent conduct. The agreements in the Perkins deeds of 1884 to Keyes and Tuck, relating to the use of the stairway and hall in the Perkins building and the maintenance of the old wall as a party-wall, do not purport to bind the "heirs and assigns" of the respective parties, but appear to have been regarded by them as applicable only to the west wall of the plaintiff building then standing, and to the particular building which Perkins himself might erect on his lot. But if those agreements could be deemed capable of being construed as covenants running with the land, they were manifestly superseded by the mutual covenants of 1887 for the erection of the new partition wall; and any easements created by those agreements of 1884 appear beyond question to have been intentionally abandoned by acts entirely inconsistent with the further enjoyment of such rights. Jones on Easements, 849, 852, and cases cited.

In the party-wall agreement of 1887, the parties "bind themselves

and their respective heirs, executors and administrators and assigns " to the faithful performance of the covenants therein contained; the instrument was under seal and appears to have been recorded in the registry of deeds, but it bears no certificate of acknowledgment. It is not controverted that such an agreement under seal creating mutual easements, and expressly binding the heirs and assigns of the respective parties, would run with the land if duly recorded after proper acknowledgment. See *King* v. *Wight*, 155 Mass. 444; Jones on Easements, 668. But it is suggested, in behalf of the plaintiff Metcalf, that the registration of such an instrument without acknowledgment was unauthorized, and therefore inoperative as constructive notice to any subsequent purchaser; and as it appears from Metcalf's testimony that he had no actual knowledge of the existence of such an agreement at the time he purchased his interest in the plaintiff lot, it is contended that while the plaintiff Bonney may be bound by that agreement as a party to it, the plaintiff Metcalf cannot be affected by it. But it satisfactorily appears that before the erection in 1899 of the building now standing on the defendant's lot, the plaintiff Metcalf had actual notice of the agreement of 1887 respecting the party-wall, accepted payment from the defendant of his proportional part of the cost of such a wall according to the stipulation in that agreement, and allowed the defendant to erect his building in the belief that all agreements purporting to create easements in the plaintiffs' lot or building had been superseded by the mutual covenants of 1887. The defendant was justified in assuming that Metcalf by accepting payment under the agreement acquiesced in it as a valid and binding one, and was thereby induced to erect his building upon a different plan from what he would have adopted if he had understood his lot to be subject to the easements now claimed in favor of the plaintiffs. Metcalf was silent when he should have spoken, and he must now be deemed to be equitably estopped to assert any such right in the defendant's building. *Martin* v. *M. C. R. R. Co.*, 83 Maine, 100; *Leavitt* v. *Fairbanks*, 92 Maine, 521; *Hussey* v. *Bryant*, 95 Maine, 49.

But, the plaintiffs finally insist that if the plaintiffs' easement in the defendant's building was extinguished or abandoned, they

acquired an easement and right of way on the defendant's lot by virtue of the following clause in the Perkins deeds of 1884, to wit: "Also to five feet in width (more or less) of land on 'the west line of my land adjoining the above described piece or parcel of land and running northerly thirty-five feet more or less." The owners of the plaintiff lot never used or claimed any right of way on the "west line" of the defendant's lot, and as it is the east line of defendant's lot which is "adjoining" the plaintiffs', it is not improbable, as suggested by counsel, that it was the scrivener's mistake in writing "west" instead of "east." At the date of that deed, as before stated, the entrance to the second story of the plaintiff building was up a flight of stairs on the west side of the building, being the east side of the defendant's lot; and this provision for a right of way five feet in width seems to have been inserted to protect the use of the old stairway until the other mode of access should be provided by the stairway and hall of the new building to be erected by Perkins, as provided in the agreement. The latter was evidently understood to be a substitute for the former, and Perkins was accordingly allowed to erect his building with solid brick walls over and across the five-foot strip in question without objection from the owners of the plaintiff lot.

Again, after the destruction of both buildings by fire and the execution of the mutual agreement for a new party-wall above considered, the defendant, as already shown on the former branch of the case, was permitted to erect his building over and across the same strip of land without question, upon paying one-half of the cost of such a party-wall; and both parties constructed their buildings so that all parts of each could be occupied without regard to the other. Here, again, the inference is irresistible that in consideration of having one-half of the thickness of the party-wall on the defendant's lot, and of the payment by the defendant of his proportional part of the cost of building it, the owners of the plaintiff lot intentionally relinquished all rights and privileges previously enjoyed in the defendant's lot as well as in the building thereon. The acts of the dominant owners relating to this claim are also wholly inconsistent with the continued existence of any such easement.

The openings for windows made by the plaintiffs in the existing party-wall were made in violation of the rights of the defendant, and could lawfully be closed by him, provided no unnecessary injury was thereby done to the adverse party.  *Normille* v. *Gill*, 159 Mass. 427, 38 Am. St. Rep. 441 ; Jones on Easements, 692, 891.

<div align="right">

*Judgment for defendant.*