CHARLES E. COTTING & others, trustees, *vs.* CITY OF BOSTON & another.

Suffolk.    November 17, 1908. — February 25, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Deed,* Construction.    *Easement.*    *Words,* "Chambers."

A deed, made in 1818, conveyed a certain lot of land on a street in Boston "with the store thereon standing . . . with a privilege in the passage of the adjoining store, for the purpose of passing and repassing to the chambers of the store hereby conveyed." The adjoining store and the land on which it stood then belonged to the grantor. Both buildings were two stories in height, and the stairway leading to the chambers, while adapted to the conditions then existing, was comparatively narrow. *Held,* that the privilege of passage was limited to the purpose of passing and repassing to the chambers in the building then conveyed, referred to as a "store," and ceased with the destruction of that building, and that the erection of a new building on the site of the old one, of the same dimensions and with a similar passageway, would have no effect to prolong or revive the existence of the easement.

PETITION, filed in the Land Court on March 27, 1906, against the city of Boston and the Boston Elevated Railway Company, under R. L. c. 182, §§ 11–14, and St. 1904, c. 448, § 1, cl. 3, to determine the validity or define the nature or extent of a possible license, privilege, easement or incumbrance claimed by the respondents in the land and building owned by the petitioners at the corner of Court Street and Cornhill in Boston. The respondent city is the owner and the respondent the Boston

Elevated Railway Company is the lessee of certain land and buildings situated at the corner of Court Street and Brattle Street and adjoining the premises of the petitioners. The license, privilege, easement or incumbrance in question was an alleged right of passing and repassing through a certain passageway and stairway upon the premises of the petitioners to reach the premises of the respondents. This right of passing and repassing was alleged to exist under a grant contained in certain deeds, by which the two premises in question were conveyed to their present owners, and also under a taking by the city of Boston, acting by the Boston Transit Commission.

In the Land Court the case was heard by *Davis,* J., upon the petition, the answers and an agreed statement of facts. He ruled that the question of what easement, if any, was acquired under the taking by the city of Boston was not open in this proceeding, and that the easement in the building upon the land of the petitioners, which was created by deed, terminated upon the destruction of the building then standing upon the land now of the respondent city. He further ruled, if it was material, that the easement created by the deed was one limited in extent to the existence of the building then and now standing upon the land now of the petitioners, in which the passageway was constructed.

He ordered that a decree be entered for the petitioners accordingly, and, at the request of all the parties, reported the case for determination by this court upon the petition, the answers and the agreed statement of facts.

If, upon the pleadings and the agreed statement of facts, the rulings of the judge were correct, a decree was to be entered for the petitioners accordingly. If his rulings were not correct, such decree is to be entered as law and justice might require.

The case was submitted on briefs.

*C. H. Tyler & O. D. Young,* for the petitioners.

*P. Nichols,* for the city of Boston.

*W. A. Gaston, F. E. Snow & R. M. Saltonstall,* for the Boston Elevated Railway Company.

RUGG, J. The deed, which gives rise to the present controversy, was executed in 1818 by David Greenough to John Lemist. It granted " a certain lot of land, with the store thereon

standing" situated on the corner of Court Street and Brattle Street. The lot was irregular in shape, measuring about twenty-two feet on Court Street and thirty-two feet on Brattle Street, the other two lines being adjacent to buildings, and respectively eighteen and thirty-two feet in length. At the conclusion of the description and as a part of the granting clause follow these words: " with a privilege in the passage of the adjoining store, for the purpose of passing and repassing to the chambers of the store hereby conveyed." The grantor named in this deed had previously been the owner of a considerable tract of land including all that adjacent to Court Street lying between Brattle Street and Market Street, which now is known as Cornhill. David Greenough then owned also the adjoining store and the land on which it stood, which now belongs to the petitioners. The parcel now owned by the petitioners and that owned by the respondent city were formerly, together with lands in the rear, owned by the New Cornhill Corporation, which in 1817 conveyed to David Greenough the parcels of the petitioners and of the respondent with the stores thereon, " reserving a free & uninterrupted passage leading from Court Street through the entry stair case, and skuttle to the chambers of said Cotting store." The Cotting store was in the rear of the parcel of the petitioners and of the respondent city, and the passage and stair-case referred to in each deed were identical.

The city of Boston is the successor in title of Lemist, and the same description of the right of passage occurs in all the deeds, through which its chain of title is traced, except that on January 20, 1898, the Boston Rapid Transit Commission, acting under authority conferred by St. 1894, c. 548, and acts in amendment thereof, took in fee the premises " together with the privilege appurtenant to said land of using the passageway in the adjoining store to reach the chambers of the adjoining building" and in deed from the Fifty Associates to the city of Boston dated July 20, 1899, of the premises owned by the respondent is the recital " with a privilege, so far as the same now exists, in the passage of the adjoining store for the purpose of passing and repassing to the chambers of the store hereby conveyed." The buildings upon the land of the petitioners are the same which were there at the time of the deeds from the New Cornhill Cor-

poration to David Greenough and from Greenough to Lemist. The building on the land of the city, which was the same in 1898 as in 1817, was, subsequently to the taking by the Boston Transit Commission, voluntarily torn down and a new building immediately erected on the land of the same dimensions as the old, and in such a manner that the second floor of the new building connects by a door with the passage and stairway in the petitioners' building at the same point and in the same manner as did the old building. This tearing down of the old building and construction of the new was done without the intention to abandon the right to use the passage and stairway on the premises of the petitioners. The new building was constructed for use as and is now used as a subway station and the second story for office purposes incidental to the management of the Boston Elevated Railway Company.

The question presented is whether under the language which defined the easement in the deed to Lemist and the subsequent deeds, through which the respondent city traces its title, the right of passage therein described became appurtenant to the new building or whether it was extinguished with the destruction of the old store. " Every deed should be so construed as to give effect to the intent of the parties, unless inconsistent with some rule of law or repugnant to the terms of the grant." *Simonds* v. *Simonds*, 199 Mass. 552. In this instance the intention of the parties can be discovered only by examination of the words employed to express their meaning as applied to the subject matter. In ascertaining the correct construction of the language used (as was said by Lord Wensleydale), " the grammatical and ordinary sense of the words is to be adhered to, unless that would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument, in which case the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency, but no farther." *Grey* v. *Pearson*, 6 H. L. Cas. 61, at 106.

It is significant that the deed, by which the right asserted by the city of Boston was created, does not rely upon the principle that a conveyance of land carries with it all structures affixed to land without particularization, but it identifies the structure upon the land as " the store thereon standing," and

the privilege of passage is limited to "the purpose of passing and repassing to the chambers of the store hereby conveyed." This language points to the then existing structure with more than ordinary distinctness. It is referred to not as a building or construction, but as a "store," and the rooms to which the right of passage is appurtenant are described not by a general or generic phrase but by the specified and limited designation of "chambers." The word "chambers," although occasionally having a broader reference, is commonly used in the more restricted sense of an upper room occupied as a sleeping apartment. It does not naturally and aptly comprehend the various purposes to which even in 1817 the upper rooms of improved real estate in the business section of Boston probably would be put. The phrase, "chambers of the store," savors of the temporary adaptation of an individual structure rather than to the perpetual enjoyment attaching to ownership in fee of real estate. A chronological examination of dictionaries shows that the primary significance of the word "chamber" was "An apartment in a house; generally used for those appropriated to lodging." Johnson's Dictionary printed in 1773. Its prevalent signification in literature was to describe rooms of this sort. The first edition of Webster published in 1828 defines it as an "apartment in an upper story above the lower floor of a dwelling house," often applied to a lodging room, with a secondary meaning of any private apartment. The later editions until 1864 give substantially the same definition. Although in England the word may have been employed in connection with inns of court to indicate rooms resorted to both for lodging and the conduct of professional work, that use of the word is not indicated by any dictionary published in the United States until the last half of the last century and by some even now is confined to England, except in the technical legal sense of hearings in chambers. Without attaching too much importance to the lexicography of the word, enough has been said to show that in 1817 and 1818 it probably was not adopted by the parties or their conveyancer with any such end as to include rooms devoted to general commercial uses.

It has frequently been decided that a right of way through a building, in the absence of plain words to the contrary, incum-

bers the servient estate only so long as the building exists described in the instrument creating the right of way. We can think of no sound principle of law which prevents the extinction of a right of way with the destruction of the building upon the dominant estate, when it seems reasonable that such was the intention of the parties. The buildings in question were two stories in height at the time of the creation of the right. The chambers were, therefore, few in number and small in area. The stairway was comparatively narrow, and, while adapted to then existing conditions, would be inconvenient for the purposes of a large structure near the business centre of a great city. It can hardly have been the intention of the parties that the servient estate should provide passage to the second floor of an office building many stories in height, the several floors of which would be reached by modern appliances and given over to the multitudinous uses of a business block. Attaching due weight to the language used and the situation of the dominant and servient estates at the time the passage was created, it appears to have been the intent of the parties to continue the right of passage only so long as either of the buildings then in existence remain, and not to create a perpetual easement attaching to the land of the dominant estate. It is of no consequence that the new building actually constructed upon the lot of the city is of the same dimensions as the older one. It is a different building, and the principle applicable to it must be the same, whatever its size.

This petition is brought under the provisions of R. L. c. 182, §§ 11–14, both inclusive, and St. 1904, c. 448. The Land Court correctly ruled that the question of what easement was acquired under the taking of the city of Boston is not open in this proceeding. The decree in favor of the petitioners should therefore recognize that the effect of the taking is left open.

*Decree for the petitioners.*