[Sac. No. 5375.   In Bank.   Mar. 23, 1942.]

J. B. ROTHSCHILD et al., Respondents, v. FRANKLIN WOLF et al., Appellants.

Nutter & Rutherford, Rutherford, Jacobs, Cavalero & Dietrich, Newton Rutherford, D. R. Jacobs, Philip Cavalero, Stephen Dietrich, Weinmann, Quayle & Berry and Donald K. Quayle for Appellants.

Gaylord & Gaylord and Robert B. Gaylord for Respondents.

THE COURT.—After further consideration of this case we find ourselves in accord with the opinion of the District Court of Appeal, Third Appellate District, rendered when the case was before that court. We therefore adopt said opinion, prepared by Justice pro tem. Steel, as the opinion of this court. It reads as follows:

"Defendants Franklin Wolf and Yosemite Theatre Company appeal from a declaratory judgment in favor of plaintiffs, decreeing that plaintiffs, as servient owners, may terminate a stairway easement by voluntarily removing or destroying the servient tenement.

"The appellant, Franklin Wolf, and the respondents, Rothschild, are owners of adjoining premises fronting on Main Street in the city of Stockton, the appellant Wolf owning lot 7 and the respondents the easterly 32.29 feet of lot 5 in block 14, east of Center street in said city.

"In 1905, Andrew Wolf, now deceased, father of appellant Franklin Wolf, owned the premises here involved, together with other adjoining lots in said block and during that year erected a two-story brick structure known as the Wolf building upon said premises. In that portion of the structure now owned by respondents a stairway was built extending from the Main street sidewalk to the hallway on the second floor thereof, the hallway running parallel with Main street for the entire length of the structure. Various rooms and offices were maintained for occupancy by tenants on this second floor and the only entrance thereto from Main street was by the aforesaid stairway.

"In 1911 Andrew Wolf died, leaving a will wherein he devised lot 5 to his daughter Delia Wolf Meiggs and lot 7 to certain of his grandchildren. The remainder of his estate was left to various legatees and devisees. In his will deceased expressed the wish that his devisees preserve the stairways

and that they be kept and used for the benefit of said buildings on Main street. The other stairway referred to extends from the California street side of the property and connects with the hallway above referred to.

"During the probate proceedings dissatisfaction with the provisions of the will arose among the heirs and beneficiaries which resulted in their entering into a written agreement which provided, among other matters not material here, that lot 5, being the property now owned by respondents, should be distributed to said Delia Wolf Meiggs, predecessor in title to respondents, and lot 7 to Franklin Wolf, the appellant herein.

"By the terms of the agreement it was stipulated and agreed:

" 'That the stairway on Main Street now used for the purpose of ingress and egress to and from the properties mentioned in this Agreement, and fronting on Main Street of Stockton, California, shall be kept and maintained as a stairway for the use of all the property hereinbefore mentioned, fronting on Main Street of said City of Stockton, so long as the lot on which said stairway is now built, is occupied by the building now on said lot, of which said stairway forms a part.'

"In due course the estate was closed and distributed in accordance with the terms of this agreement, the decree adopting the language of the agreement in so far as its provisions relate to the stairway here in issue. The sole issue, therefore, is a determination of the rights of the parties hereto under this agreement as incorporated in the decree of distribution. Trial was had before the court sitting without a jury.

"Considerable evidence was introduced as to whether or not the structure built upon the two lots in question comprised one building or two separate buildings. This evidence was directed principally to the nature of the construction of the building, the partition wall, fire wall, and the general physical conditions and facts relating thereto, it being one of the contentions of appellants that the structure is but one building originally built and owned by one person and that an easement by implication arose when the property was devised into two or more ownerships upon the death of Andrew Wolf. The trial court found that the improvements did not constitute a single building, but that the portion thereof on lot 7 and the por-

tion thereof on lot 5 constituted separate and distinct buildings. This finding appears to be supported by the record. ■ We do not, however, consider this question of vital importance for the heirs and beneficiaries subsequently partitioned the property among themselves upon a basis entirely different from the provisions of the will, and expressly agreed as to the right and use of the stairway and the duration of such right. The decree of distribution makes no attempt to construe the will in this regard, but does adopt the terms and provisions of the agreement and therefore the easement implications, if any, arising by virtue of the will, cannot now be resorted to for the reason that the decree is final and excludes any implied covenants upon this subject. (Civ. Code, sec. 1656.) ■ The trial court found in substance and effect that a stairway easement existed, and in this we concur. However, the court further found upon evidence introduced over the objection of appellants, and submitted upon the question of depreciation because of obsolescence, that such depreciation and obsolescence had not so far progressed as to be the equivalent of the destruction of the building, but had so far progressed as to make it *economically advantageous* to plaintiffs, as owners of the premises, to destroy the present improvements thereon and, in lieu thereof, to erect a new building.

"The fact that it may be *economically advantageous* for the owner of a building, burdened with a stairway easement in favor of an adjoining property, to voluntarily destroy it and thus terminate such easement, is, in our opinion, immaterial and not in accord with the weight of authority applicable to such servitudes.

"In this respect, however, we do not wish to be understood as intimating that depreciation or obsolescence of a building may not in the course of time so far progress as to impair property rights in the further maintenance thereof even though not to the extent of being the equivalent of destruction of such building. In the instant case no claim is made that the property is being operated at a loss, but to the contrary the evidence discloses a fair net return to respondents on their investment.

■ "While there are very few cases relating to destruction of servient tenements involving stairway easements, the doctrine appears to be generally established that a grant of

the right to use a hall or stairway of a building gives no interest in the soil which will survive the destruction of the building. (*Cohen* v. *Adolph Kutner Co.*, 177 Cal. 592 [171 Pac. 424, L. R. A. 1918 D, 410]; *Muzio* v. *Erickson*, 41 Cal. App. 413 [182 Pac. 974].)

"In the case last cited, the principal question before the court was whether stairway rights survived the destruction of the building by fire and therein it was held that the right to use the stairway terminated with the destruction of the building *without the fault of the owner thereof*. In this connection the court states:

" 'It is the established doctrine that where a mere right to use a part of a building is granted, no proprietary interest in the land is conveyed. Upon this principle it has been held that a grant of the right to use the stairway of a building gives no interest in the soil which will survive the destruction of the building, and the right ceases whenever the building is destroyed *without the fault of the owner of the servient tenement,* and the owner of the right to use the stairway will not acquire any right in any new building which may be erected in the place of the one destroyed. An easement, in the true sense of the word, is an interest in real estate, and survives the destruction of a part of the servient tenement when there is anything remaining upon which the easement may operate. But a right in the nature of "an easement in a building," as it is sometimes called, is extinguished by the destruction of the building, or the part thereof upon which the easement is imposed, so that there is nothing upon which it can operate. (*Cohen* v. *Kutner Co.*, 177 Cal. 592, L. R. A. 1918D, 410, 171 Pac. 424; *Brechet* v. *Johnson Hardware Co.*, 139 Minn. 436, L. R. A. 1918D, 691, 166 N. W. 1070; *Shirley* v. *Crabb*, 138 Ind. 200, 46 Am. St. Rep. 376, 37 N. E. 130; 14 Cyc. 1194.)' (Italics added.)

"Respondents contend that the rule laid down in the two California cases above cited is dictum in so far as it applies to the instant case, in that the destruction of the buildings was involuntary in both cases. Irrespective of the construction placed upon such language with reference to destruction of the buildings without fault of the owner, the court was, in both cases, engaged in a consideration of the law applicable to the destruction of stairway easements, and in our opinion fully stated the rule in that regard. The authorities in other

jurisdictions appear to be in harmony with this principle; thus in *Brechet* v. *Johnson Hardware Co.*, 139 Minn. 436, L. R. A. 1918D, at page 693, cited in *Muzio* v. *Erickson, supra,* it is stated:

" 'Where an easement has been granted for a particular purpose in connection with a particular building, it is extinguished by a destruction of that building. So a grant of the right to use the hall or stairway of a certain building gives no interest in the soil which will survive a destruction of the building, *and the right ceases whenever the building is destroyed without the fault of the owner of the servient estate,* and the owner of the easement will not acquire any right in any new building which may be erected in the place of the one destroyed.' (Italics added.)

"Respondents cite the case of *Union National Bank* v. *Nesmith,* [238 Mass. 247] 130 N. E. 251, wherein the majority of the court held that such an easement is also lost when the building is destroyed by the intentional act of the owner of the servient estate. Such apparently is the rule in Massachusetts, although we find no other authority supporting such contrary doctrine in any of the other jurisdictions.

"It is further argued by respondents that the servitude in the instant case is in the nature of a license to use the stairway as distinguished from an easement which is an interest in land, and therefore revocable at the will of the servient owner. The covenant in the agreement creating the servitude is reasonably definite and certain. The authorities uniformly hold that such a grant of the use of a stairway constitutes an easement and does not necessarily attach to the underlying soil. In both the Cohen case, supra, and the Muzio case, supra, the court held that such use does not survive destruction of the building, although the covenant creating the right provided in one case that the right shall be 'forever' and in the other case 'perpetual'."

Since the rendition of said opinion by the District Court of Appeal, Franklin Wolf, one of the original appellants, has died, and by an order of this court, the American Trust Company as the executor of his last will and testament has been substituted in his place and stead as one of the appellants herein.

We therefore conclude that the decree herein should be and it is modified to provide that respondents may not destroy the easement for the use of the stairway without the

consent of the appellants and that without such consent the easement shall continue until the building on lot five is destroyed or the easement becomes inoperative without the fault of the respondents.

As so modified the judgment is affirmed, appellants to recover their costs.

GIBSON, C. J., Dissenting.—Plaintiffs seek a declaratory judgment establishing the extent of the burden imposed upon their property under the terms of a written instrument which subjects that property to a stairway easement in favor of defendants. The only uncertainty relates to the duration of the easement which is created by the following language: ". . . the stairway on Main Street then and now used for the purposes of ingress and egress to and from the properties hereinbefore mentioned, and fronting on Main Street of Stockton, California, should be kept and maintained as a stairway for the use of all properties hereinbefore mentioned . . . *so long as the Lot on which said stairway is now built is occupied by the building on said Lot,* of which building said stairway forms a part." The property involved consists of two adjoining buildings, each two stories in height, built in 1905. The principal means of access to the second floor of the building on defendants' property, however, has been provided under the terms of the stairway easement by the stairway in plaintiffs' building. Plaintiffs allege that the building upon their property is obsolete and that they desire to destroy their building, together with the stairway, and to erect a modern building thereon. The trial court rendered a declaratory judgment decreeing that plaintiffs' title should be quieted against the defendants "as to the use of said or any stairway upon said premises above described as belonging to said plaintiffs in the event of the removal or destruction of the building now located thereon, whether by voluntary act of plaintiffs or otherwise . . ."

The judgment of the trial court should be affirmed. The right to use a stairway on the property of another constitutes a grant in the nature of an easement. The easement, however, is in the building rather than in the land upon which the building is located. Thus, it is held that the destruction of the building in which the stairway is located also extinguishes the easement since there is no longer a servient tenement in existence upon which the right can operate. (*Cohen* v. *Adolph*

*Kutner Co.*, 177 Cal. 592 [171 Pac. 424, L. R. A. 1918D, 410]; *Muzio* v. *Erickson*, 41 Cal. App. 413 [182 Pac. 974]; Civil Code, §811 (2) *Brechet* v. *Johnson Hardware Co.*, 139 Minn. 436 [166 N. W. 1070, L. R. A. 1918D, 691]; *Shirley* v. *Crabb*, 138 Ind. 200 [37 N. E. 130, 46 Am. St. Rep. 376]; *Rudderham* v. *Emery Bros.*, 46 R. I. 171 [125 Atl. 291, 34 A. L. R. 602]; 9 Cal. Jur. 959; 19 C. J. 955; 17 Am. Jur. 1024; 2 Thompson, Real Property (1939), p. 362; 34 A. L. R. 606; (1918) 6 Cal. L. Rev. 299.) Citing many of the cases listed above, the majority opinion in this case concedes that the destruction of plaintiffs' building by natural forces would terminate defendants' stairway easement by destroying the servient tenement. It is held, however, that this rule is operative only where the servient tenement is destroyed without the fault of the servient owner. The limitation thus placed upon the rule appears to me to be illogical. An easement of this kind requires both a dominant and a servient tenement and a complete destruction of the servient tenement destroys the easement because one of the requisite elements of such a property interest is lacking. (Cf. *Bonney* v. *Greenwood*, 96 Me. 335, 341 [52 Atl. 786]; *Day* v. *Walden*, 46 Mich. 575, 586 [10 N. W. 26]; Jones, Easements, p. 673, §838.) This is true even though the interest granted has been described as one which was to endure "forever." (*Cohen* v. *Kutner Co.*, *supra.*) The conclusion seems inescapable, therefore, that the grantee of a stairway easement who possesses merely a right measured by the existence of the particular structure has no property interest which survives the total destruction of the servient tenement, even though that destruction be accomplished by an act of the owner. (Civil Code, §811 (2).)

Most of the cases in which the courts have held that destruction of the building constituting the servient tenement extinguishes the stairway easement have involved destruction by natural causes over which the servient owner had no control. (See, 34 A. L. R. 606.) But the question of a voluntary destruction of the servient tenement in a similar situation was presented to the court in *Union National Bank of Lowell* v. *Nesmith*, 238 Mass. 247 [130 N. E. 251]. In that case two adjoining buildings were erected in 1852 with a common entrance, stairways and landings. A successor in title to one of the buildings proposed to tear it down and erect a new one without making provision for the common entrance and stairways. The court held, in 1921, that this could be done, saying (p. 249): "Where there is an easement of way through a

building as distinguished from such right upon and over land without reference to a structure thereon, the incorporeal hereditament is measured and limited by the existence of the structure in which it only can exist and be exercised; and the person owning the easement by the evident intent of the parties has no easement in the servient estate apart from the building. If the structure ceases to exist, the right ends as there is nothing upon which it can be exercised. . . . In the opinion of the majority of the court, the easement is also lost when the building is destroyed by the intentional act of the owner of the servient estate. The person entitled to such right has no interest in the land as such . . ." Very few cases have discussed the problem of voluntary destruction, and the question has not previously been passed upon in this state. Defendants rely upon certain language in *Muzio* v. *Erickson, supra,* as indicating that the rule is limited to destruction of the servient building without the fault of the owner, but the court in that case was dealing with an accidental destruction by fire and did not have in mind the specific problem here considered. Since such an easement cannot exist without a servient tenement, I cannot agree with the conclusion that it would not be terminated by the voluntary destruction of the servient tenement.

Although it is true that the destruction of the servient tenement would terminate the stairway easement regardless of how the destruction was brought about, a declaration to that effect would not answer the main issue presented by plaintiffs in this action. Plaintiffs seek a declaration that they "may remove their building, including said stairway." Plaintiffs desire to know, in other words, whether they may remove their building, thus terminating the stairway easement, without incurring liability to the owners of the dominant tenement. The answer to this question depends upon the intention of the parties as expressed in the written instrument providing for the easement. Assuming, under the principles set forth above, that the stairway easement would be terminated by any destruction of the servient structure, the easement owner might nevertheless be entitled to the aid of a court in preventing such destruction or in recovering damages where the destruction is in violation of the clear intention of the parties. In the present case the instrument provides that "the stairway on Main Street . . . should be kept and maintained as a stairway for the use of all the properties

. . . so long as the Lot on which said stairway is now built is occupied by the building on said Lot, of which building said stairway forms a part.'' This language in no way limits the power of the owner of the servient structure in dealing with his own property, nor does it suggest that he must maintain the building in its present form for any particular period of time. In the absence of a clear indication of the intent of the parties, it is impossible to imply, as suggested by defendants, that the parties intended the plaintiffs' building to be maintained in its present form, despite changing circumstances, pending its destruction by natural causes. The imposition of affirmative duties upon an owner of land should result only from a clear expression of the intent of the parties, and should not be implied in the absence of such an expression. (See, *Coulter* v. *Sausalito Bay Water Co.,* 122 Cal. App. 480, 494 [10 P. (2d) 780]; Civil Code, § 806.) The agreement itself does not indicate that any such obligation is imposed upon the owner of the servient building, and there are strong objections of policy to the creation of such an affirmative burden by implication. An implied obligation to maintain the building until its destruction by natural causes or by order of the public authorities might easily result in a situation where the building could neither be disposed of nor replaced for a considerable period of time, contrary to the settled policy against undue restrictions upon the free use and alienation of property. (See, *Friesen* v. *City of Glendale,* 209 Cal. 524, 529 [288 Pac. 1080]; 7 Cal. Jur. 733; 3 Tiffany, Real Property (1939), p. 474.)

Defendants, as disclosed in their cross-complaint, interpret the instrument creating the present easement in direct opposition to these fundamental principles. They seek a decree requiring that plaintiffs' building be kept and maintained to provide a stairway for defendants' building ''so long as that portion of said Wolf Building . . . exists and until the same be destroyed without the fault of plaintiffs.'' The majority opinion in effect adopts this position by decreeing that ''without the consent of the appellants [defendants] . . . the easement shall continue until the building on lot five is destroyed or the easement becomes inoperative without the fault of the respondents [plaintiffs].'' In support of this interpretation of the instrument defendants urge that the servient owner should not be permitted to destroy another's vested property right by his own voluntary act. It is true that during the life of an easement the servient owner may not inter-

fere with the easement which he has granted. (See, 9 Cal. Jur. 953.) It is established, nevertheless, in the law of real property that, if the parties so intend, they may create an interest in real property which is determinable upon the happening of a stated event even though that event is dependent in some measure upon the volition of the one granting the interest. (Rest., Property, § 44, comment h; id., § 45, comments g, h, i; see, *La Laguna Ranch Co.* v. *Dodge,* 18 Cal. (2d) 132 [114 P. (2d) 351].) Language providing that a property interest shall endure "so long as" a specified condition exists, as in the present case, is ordinarily interpreted to create such a determinable interest. (See, Rest., Property, § 44, Illus. 5-8.)

In view of the principles stated herein and the considerations of public policy involved, I do not believe that the easement in the present case should be interpreted to compel the maintenance of plaintiffs' building in its present condition until it is destroyed by natural forces or by an act of the public authorities. The conclusion of the trial court in this case seems more reasonable. As the court said in *Union National Bank of Lowell* v. *Nesmith, supra,* page 249: "The parties did not intend to and did not create a right of any greater permanency in the use of the petitioner's building than was assured by the character of the structure and the likelihood that the owner would not for a considerable time change the manner of the use of his premises. This is the reasonable construction of their rights." (See, *Cotting* v. *City of Boston,* 201 Mass. 97 [87 N. E. 205] ; 3 Tiffany, Real Property [3rd ed. 1939], p. 354.) This construction of the easement would not result in a mere illusory interest. (See, Conard, *"Easement Novelties,"* 30 Cal. L. Rev. 125, 139.) In this case, for example, the arrangement made in 1911 has actually been carried out for over thirty years. Only by the complete destruction of the servient tenement could the voluntary act of the servient owner terminate the easement and, considering that both buildings were new at the time the servitude was created, such a drastic step was highly improbable for a considerable period.

For these reasons the judgment of the trial court which permitted plaintiffs to remove their building, thus terminating the easement, seems to me to declare the rights of the parties correctly. The judgment should be affirmed.

Edmonds, J., Traynor, J., concurred.