O. K. WINTERRINGER, Plaintiff in Error,

v.

J. P. PRICE and Maxine M. Price, Defendants in Error.

No. 38720.

Supreme Court of Oklahoma.

May 31, 1961.

As Amended June 7 and Dec. 19, 1961.

Rehearing Denied Dec. 19, 1961.

Application for Leave to File Second Petition for Rehearing Denied May 8, 1962.

Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for plaintiff in error.

Miller & Peters, Shawnee, for defendants in error.

BERRY, Justice.

The parties, who appear here in reverse order to their appearance in the trial court, will be referred to as they appeared in said court.

In 1900, a two-story brick building was constructed on Lots 12 and 13, Block 26, Amended Plat to Shawnee, Oklahoma. The lots are contiguous. As of date of construction and since, the lots have been owned by different persons. Plaintiffs acquired title to Lot 13 on July 19, 1950. Defendant acquired title to Lot 12 on December 17, 1958. The following statement appears in the warranty deed under which defendant took title to Lot 12:

"6. Party Wall Agreement and Easement in the stairway and hall between and located on portions of Lots 12 and 13, Block 26, amended plat to Shawnee, Oklahoma, which easement, if in writing, has been misplaced or lost and is Not Recorded.

"The above grantee by the acceptance of this deed, covenants and agrees that he has received copies of and is familiar with the contents of all documents above referred to except the Party Wall Agreement and easement last above described and in relation to the said easement grantee covenants and agrees that he has made investigations of all interested parties and satisfied himself relative to the existence of said easement and the terms and conditions thereof and accepts the same."

The brick building was divided by a wall approximately 13 inches wide and the walls of a stairway leading up from a common street entrance to a hall on the second story of the building, thus two buildings were in effect created. There was no fire-wall separating the buildings and the roof extended unbroken, except for a skylight, over the entire structure. The skylight was near the top of the stairway. One half of the wall, stairway and skylight stood on either lot.

It appears that the buildings were at all times in a good state of repair; that the lower portion of the building was at all times occupied but that some of the office space on the upper floor had remained vacant for a long period of time.

On March 5, 1959, defendant notified plaintiffs in writing that he planned to demolish that portion of the building resting on Lot 12; that he planned to build on said lot a "one-story building of modern de-

sign, which will leave your wall, on the second-floor level exposed to the elements"; that excavation work would be done on the lot; that plaintiffs should therefore take precautionary measures consisting of (1) building a suitable wall to protect plaintiffs' sheetrock on the second-floor level; (2) relocating the stairway; and (3) "prepare for the support of (plaintiffs') building during the excavation work".

After having been so notified, plaintiffs instituted the instant action to enjoin defendant from interfering with or removing the stairway, landing, skylight, hall and party wall or walls. Plaintiffs pleaded that they had acquired a prescriptive easement covering use of said properties in connection with the use of their Lot (13).

By appropriate pleadings, defendant denied that plaintiffs owned the easement upon which their action was predicated. Defendant did not seek affirmative relief.

Following trial of case to the court, judgment was rendered in favor of plaintiffs. The pertinent portion of the trial court's judgment are findings that "Neither plaintiffs nor plaintiffs' tenants have made beneficial use of the hallway since 1951; and it is not necessary to the use and enjoyment of plaintiffs' property"; that "by reason of the mutual and reciprocal use of plaintiffs and their predecessors in title and defendant and his predecessors in title of the common stairway and second floor landing so located at the property line of the building and one-half on each, the plaintiffs have acquired an easement over and upon the property of the defendant for the continued use of the stairway and second floor landing together with a wall to enclose and support the stairway, which easement is a burden upon the property of the defendant for the uses and purposes of a common stairway and providing access to the upper floor of plaintiffs' property; and defendant has no right to demolish the common stairway, located upon defendant's property; even though the rest of the building is being demolished as a part of defendant's current building program";

that "except for the stairway and reasonable ingress and egress to the upper floor of plaintiffs' property, plaintiffs have no further rights in or easement upon the property of defendant"; and conclusions that "plaintiffs have an easement over and upon the property of defendant for continued use and occupancy of the common stairway and support thereof between the real properties involved"; that "such easement shall include the existent stairway, as located upon the first floor of defendant's property; and, at the point where the stairway reaches the second floor, the easement shall extend generally in a northwesterly direction to the property line between the two buildings, a sufficient distance to the north of the stairway to provide reasonable access thereto; and from that point to the north property line of defendant's property, the plaintiff shall have no further right in or easement upon defendant's property"; that "upon dismantling of the roof and structure upon defendant's property, defendant shall provide subjacent support and reasonable and proper protection to the property of plaintiffs from the elements."

From order of the trial court denying defendant's motion for new trial which was directed to the referred-to judgment, defendant perfected this appeal.

Defendant contends that plaintiffs and their predecessors in interest had only a license to use that portion of the wall, stairway, hall and skylight which was built on defendant's lot; that said license was revocable upon reasonable notice; and that the license was in any event extinguishable upon defendant's electing to build a modern building on his lot.

Plaintiffs contend that defendant's acceptance of the deed which carried the provisions heretofore quoted "subjected him to equitable principles which he cannot disavow"; that in any event uninterrupted use of that portion of the wall, hall and stairway resting on defendant's lot for approximately 60 years gave them a prescriptive easement and right to continue to use said property.

We will first consider plaintiffs' contention based on that portion of the deed which is heretofore quoted.

The lawyer who drafted the deed testified in substance that he and to his knowledge his clients who were defendant's grantors, had no actual knowledge that an agreement had ever been entered into covering reciprocal easements in the wall, hall and stairway; that he wished "to protect (his clients) against any possibility on the warranty, so (he) naturally assumed there would be some sort of agreement whereby those things were put in there" and for said reason made the quoted provisions a part of the deed.

■ There is no direct evidence sustaining the proposition that an express agreement was entered into covering the matters referred to in the quoted portion of the deed, and the fact that the lawyer who drafted the deed thought that the physical facts indicated that such an agreement had probably been entered into and, therefore, sought to protect his clients on their warranty as to such possible agreement does not serve to establish as a fact that such an agreement was in fact entered into. In 26 C.J.S. Deeds § 140(3), p. 1012, it is stated that "A provision, as an exception, cannot, however, operate actually to vest rights in a third person not a party to the instrument, or to more than recognize and confirm the right which the stranger already has, for no one not a party to the deed can acquire any rights or interests in the land by virtue of any exception therein contained more than by a reservation." See also Phillips v. Johnson, 202 Okl. 645, 217 P.2d 520.

There remains for consideration the issue of whether plaintiffs had a prescriptive easement or only a revocable license covering the property rights that they assert.

Defendant cites Haas et al. v. Brannon, 99 Okl. 94, 225 P. 931, as being dispositive of this case. As we understand defendant, he contends and presents authority to the effect that an easement such as is asserted

by plaintiffs must rest on an express grant where, as here, there was never common ownership of the lots; that in the absence of an express agreement, the owners of Lot 13 had only a license to use the common stairway, hall and dividing wall which was revocable by either owner at any time, and that the license was revoked upon defendant's electing to make improvements to his building or to demolish his building for the purpose of building a modern building. Defendant asserts that our decision in said case reflects that we chose to follow the line of reasoning adopted in Union Nat. Bank of Lowell v. Nesmith et al. 238 Mass. 247, 130 N.E. 251, 252. The last cited case sustains defendant's contentions as to the stairway and hall but not as to the party wall. In connection with a party wall, the court said this:

"* * * A party wall is a part of each house and each owner has an equal right in the whole wall with the other. Everett v. Edwards, 149 Mass. 588, 22 N.E. 52, 5 L.R.A. 110, 14 Am. St.Rep. 462. The right of support of a building by that of an adjoining owner, where it exists at all, is ordinarily reciprocal in its nature, and is an extension of the common law doctrine forbidding an owner of land to withdraw its natural support from his neighbor. See Gilmore v. Driscoll, 122 Mass. 199, 23 Am.Rep. 312; Adams v. Marshall, 138 Mass. 228, 52 Am.Rep. 271."

Haas v. Brannon, supra, does tend to sustain defendant's contention, but in our opinion the case is not dispositive of this appeal. In said case an easement was asserted in a lobby and columns erected on the outside front portion of the building, which columns supported in part the upper story of the building. The building had been constructed less than 15 years when the litigation arose and for said reason the matter of where a prescriptive easement existed was not in issue. It was also possible in said case to prove as a fact that an agreement covering the asserted easement had never been entered into. As heretofore pointed

out, the building or buildings in controversy had been constructed some 60 years prior to institution of the instant action, and due to the passage of time it was impossible to establish as a fact that an agreement had not been entered into covering the easement asserted by plaintiffs or that plaintiffs' predecessors in the past had not made adverse use of the rights asserted by plaintiffs for a continuous period of 15 years. The facts of this case therefore serve to distinguish same from the Haas case.

In support of their contentions, plaintiffs cite provisions of 60 O.S.1951 § 49, to this effect:

> "The following land burdens or servitudes upon land, may be attached to other land as incidents or appurtenances, and are then called easements:
>
> \*   \*   \*   \*   \*   \*
>
> "4. The right of way.
>
> \*   \*   \*   \*   \*   \*
>
> "12. The right of using a wall as a party wall.
>
> "13. The right of receiving more than natural support from adjacent land or things affixed thereto."

■ To our way of thinking, the cited statute makes clear that an easement may exist in a party wall and in a right-of-way and that said easements are a burden on the land upon which the wall stands or the right-of-way exists. As a general rule, such easement cannot be destroyed by voluntary destruction of the party wall or right-of-way. In our opinion, the phrase "the right of way" appearing in Sec. 49 may, and in the instant case should, be construed as covering a stairway or hall. See 17A Am. Jur. "Easements", Sec. 2, pp. 616, 618.

■ As opposed to the conclusion reached in Union Nat. Bank of Lowell v. Nesmith, supra, the plaintiffs cite Rothschild et al. v. Wolf et al., 20 Cal.2d 17, 123 P.2d 483, 154 A.L.R. 75. In the cited case the court held that the right to use a common stairway was not, under the facts of that case, a license but was an easement and for

said reason it was not the privilege of the servient owner to voluntarily destroy same; that the easement "would continue until destruction of the building without fault of the servient owner." The plaintiffs contend that California has a statute like or similar to Sec. 49, supra; that Massachusetts does not have a like or similar statute; that the Massachusetts decisions are based upon common law and not statutes such as Sec. 49, and for said reason we should follow the California decisions. Defendant disagrees and asserts that Massachusetts has statutes comparable to Sec. 49. Defendant also refers to the provisions of 60 O.S. 1951 § 59, to the effect that a servient is extinguished by the destruction of the servient tenement and contends that a voluntary destruction of the servient extinguishes the servitude. We have never so construed said statute. We are of the opinion that the statute should be construed as applying to an involuntary destruction but not a voluntary destruction, which construction is in keeping with the common law. See 28 C.J. S. Easements § 53, p. 716, and 40 Am.Jur., "Party Walls", Sec. 37, p. 507.

The lack of harmony in the decisions as applied to the issue before us, in so far as same involves stairways and hallways, appears from cases cited in the annotated notes beginning at page 82 of 154 A.L.R. In so. far as said issue involves party walls it is stated in the last referred-to citation to 40 Am.Jur. that "The broad rule prevails that neither of the part owners of a party wall has any right, without the consent of the other or express statutory authority, to tear down or remove the wall unless it is in a ruinous and dilapidated condition, or has become insufficient in point of support, or otherwise inappropriate for the purpose for which it was intended."

We are of the opinion that in order to reach a decision herein, it is not necessary to look to decisions from other jurisdictions; that we have in fact announced a rule in the following cited cases which is decisive of the principal issue presented by this appeal.

In Johnson v. Whelan et al., 171 Okl. 243, 42 P.2d 882, 98 A.L.R. 1096, the plaintiff and defendant owned adjacent lots. In 1908 they jointly constructed a concrete driveway on their medial line which was thereafter used by the occupants of the respective lots. The lots were at no time owned by the same person. In 1931, the plaintiff brought an action to enjoin defendant from interfering with their use of the driveway. The plaintiff contended that defendant had only a license to use the driveway and defendant contended that he had a prescriptive easement covering the use of the driveway. The trial court held for the defendant and the plaintiff appealed. In affirming the trial court, the following was said in the syllabus:

"1. The owner of a town lot may enjoin owner of adjacent lot from obstructing paved private driveway, constructed on medial line by previous owners, each of whom contributed portion of his lot and half of the expense of the driveway, where such way has been in continuous use for more than 15 years, even though no writing was executed by either owner at any time, granting a way to the other.

"2. While the mere permissive use of a way over the land of another will not ripen into an easement, yet one who joins his adjacent landowner in the construction of a paved private way over and along the medial line has given such adjacent owner more than a mere license. Each owner, by use of the driveway, is continuously asserting an adverse right in the portion of the way on the other's lot. And from such use for 15 years the law raises a presumption of the grant of an easement."

In Nokes v. Padgett, Okl., 262 P.2d 423, the rule announced in the above quoted syllabus was followed and applied to a factual situation comparable to that presented in Johnson v. Whelan.

The defendant apparently realizes that the referred-to rule would be applicable to and decisive of the principal issue presented by this appeal unless said rule applies only to jointly-built driveways. He asserts that such is the case and refers us to that portion of our decision in Friend et al. v. Holcombe, 196 Okl. 111, 162 P.2d 1008, 1011, to the effect that "The rule is narrow in its application. It applies when two owners of adjacent property construct a driveway, one-half of which is on the land of each and holds that the continuing use of such a driveway is in effect adverse and should be so treated." The sense of said statement is not that the rule announced in the cited driveway cases is applicable only to driveways. To the contrary, the sense is that the rule will be narrowly applied to cases where, as here, the owners of adjoining property jointly build on their properties a structure which is intended for use by each of them or their successors and is so continuously used for the applicable prescriptive period.

The evidence fails to show that the building or buildings were dilapidated and that they were not in fact serviceable. To the contrary, the evidence merely raises an implication that defendant was convinced that it was to his advantage to demolish his portion of the building and build a one-story building with a basement; that he could and apparently did negotiate a lease contract with a so-called chain store covering the rental of the building which he planned to build. To our way of thinking, the evidence fails to show a change in the condition of the building or buildings or the area in which same were erected, they would, in any event, justify application of defendant's theory to the general effect that dilapidated structures must give way to new structures with attending loss of easements in the dilapidated structure. For reasons stated the judgment of the trial court is affirmed.

DAVISON, JOHNSON, JACKSON and IRWIN, JJ., concur.

HALLEY, J., WILLIAMS, C. J., and BLACKBIRD, V. C. J., and WELCH, J., dissent.

HALLEY, Justice (dissenting).

The majority opinion at the outset says that the plaintiff, defendant in error, was entitled to an easement in this case because of 60 O.S.1951 § 49. This section has no application to the facts in this case for the following reasons: First there was no grant of an easement either actual or implied; Second there was no easement by prescription. Parties agree there was no actual grant of an easement. In order to obtain a grant by implication the two lots involved in this suit must have been owned by a single owner. This never existed here. Haas et al. v. Brannon, 99 Okl. 94, 225 P. 931, 936. I quote from this case:

> "It may be said in general that the tendency of the courts is to discourage implied grants of easements, since the obvious result, especially in urban communities, is to fetter estates and retard buildings and improvements, and is in violation of the policy of the recording acts."

Was there an easement obtained in this case by prescription? I say not. The evidence before us shows that use made of the stairway, the stair landing and the space amound it was at all times permissive. No evidence of adverse use or possession of the premises by either the owners or occupants of the premises involved has been shown. From the erection of the buildings on the respective lots, the use of them by all was permissive. It has long been the rule in this jurisdiction that mere license or permissive use of lands of another, however long continued, will not ripen into a prescriptive right or easement. Catterall v. Pulis, 137 Okl. 86 278 P. 292; Thomas v. Morgan, 113 Okl. 212, 240 P. 735, 43 A.L.R. 934.

I think that Union National Bank of Lowell v. Nesmith et al., 238 Mass. 247, 130 N.E. 251, lays down the sound rule of law to follow in the case at bar. The majority opinion cites Rothschild et al. v. Wolf et al., 20 Cal.2d 17, 123 P.2d 483, 154 A.L.R. 75, as sustaining its position. With that I cannot agree. In the last mentioned case there was an agreement creating an easement and in the case at bar there is no such agreement. I say that no easement exists in this case either by grant or prescription.

I dissent.

I am authorized to state that WELCH, J., concurs in the views expressed herein.