## CATTERALL v. PULIS.

No. 18369. Opinion Filed Feb. 12, 1929.

Rehearing Denied June 11, 1929.

Melton & Melton, for plaintiff in error.

C. D. Chastain, for defendant in error.

RILEY, J. Pulis began this action seeking injunction to restrain Catterall from interfering and preventing plaintiff's use of a roadway along the north line of defendant's land. This appeal is from a judgment granting injunctive relief to plaintiff as sought.

The situation of the parties is disclosed by the plat following:

Pulis alleged himself to be the owner of the W. ½ of the W. ½ of the S. E. ¼, lying east of the C., R. I. & P. Ry., of section 3, twp. 6N., range 7W., I. M., on which he now lives.

Defendant Catterall owns the N. ½ of S. W. ¼ of section 3, twp. 6N., range 7W., I. M.

Pulis alleged that there is a road along the north line of defendant's land which is a way of necessity for ingress and egress for plaintiff for the use of his land which consists of 14.96 A. That the use of this road was included in the deed of grantor to plaintiff and that it had been used for more than 15 years prior to the date defendant closed the road, etc.

The defendant answered, admitting ownership of the lands as alleged, denied that there is a roadway along the north side of his farm as described in plaintiff's petition, denied plaintiff had no other way of ingress or egress to his lands, but alleged that plaintiff's land adjoined the section line between sections 3 and 9, twp. 6N., range 7W., and that the north line of plaintiff's land is on the one-half section line, and that the same had never been used as a roadway or condemned for such purpose.

A temporary restraining order was issued by the court below, and at the trial of the cause it was agreed that the hearing upon the matter of the temporary restraining order be also for the purpose of final hearing on the application for permanent injunction. Thereafter the court took the matter under advisement, and on the 11th day of May, 1927, entered judgment in favor of plaintiff. In due time and course this appeal was perfected.

The evidence of plaintiff, Pulis, is substantially as follows:

Catterall and one Schlotterbuck owned the tract of land designated in the plat as that of Pulis. In 1919, Schlotterbuck conveyed by warranty deed the said land to plaintiff, Pulis, and one J. B. Storms, the only clause of which deed involved here is the usual habendum as follows:

88

"To have and to hold the same, together with all and singular tenements, hereditaments and appurtenances thereunder belonging or in anywise appertaining, forever."

Catterall was not a party to the deed, for legal title was vested in Schlotterbuck. One Dick Cavett was also interested in the land, but Pulis dealt with Catterall, and plaintiff, Pulis, testified that prior to his purchase of the land Catterall owned a slaughterhouse located on the land which was included in the sale and purchase, that the only means of getting out to the Ninnekah highway from the slaughterhouse was across the railroad down the tracks and across the land west of the railroad, which was now owned by Catterall, and that Catterall had now stopped plaintiff from crossing his land, but that this roadway had been used for a long period of time and that after he had purchased the land for two or three years he had used said roadway, but that at the time of trial the railroad had closed and fenced the passageway across its tracks and it had been so closed for two years.

George Rider testified for plaintiff that he used the roadway in dispute 20 years ago; that the roadway was closed about a year ago; that he only used it in wet weather when the bottom road could not be used; that the road did not run then as it did now, but that it was practically the same road, but that the crossing used then was south of where it was afterward established, and then the people used to cross the pasture, for that the land was not then in cultivation as now; that now there is and has been a road to the Pulis land which goes north of it and up the railroad right of way.

The Pulis land joins the section line on the south. Pulis testified that the section line on the south had not been opened and the county commissioners had declined to open it.

Schlotterbuck testified he, Catterall, and Cavett owned the land afterward conveyed to Pulis; that he did not reserve any part of the roadway for Pulis by deed or otherwise, but had reserved a road in a deed to Catterall of the land now owned by him to be used in connection with other land then between the Catterall land and the railroad, which latter was deeded to Catterall.

That concluded the material evidence of plaintiff. A demurrer was overruled.

Defendant produced Catterall, who testified that the only people who used the roadway to the slaughterhouse on the Pulis land when he owned it were himself and employees; that there was no passage across the railroad; that the old road went down the right of way to the old knitting mill and was at a different place from that subsequently used, and that the road shown by the plat on the north side of his land from the Ninnekah highway to the railroad was never used except two or three times up to two or three years before trial; that Pulis could obtain a way of ingress and egress over the main section line.

The defendant placed in evidence a judgment between the railroad and Pulis enjoining him from interfering with the fences and right of way through and across the west one-half of section 3, twp. 6 N., range 7W., the same being that part of the railroad right of way forming the west boundary of the Pulis land.

The defendant in error, Pulis, relies upon the clause containing the word "appurtenances" and contends that thereby the roadway in dispute as an easement was granted unto him.

Section 5250, C. O. S. 1921, defines "appurtenances" to mean:

"All of the improvements and every right of whatever character pertaining to the premises described."

The query, then, is whether there was a dedication of a roadway existing at the time of the deed which pertained to the premises described and conveyed. Under the evidence, we hold not. There was slight evidence, to which objection was made and which objection was meritorious, tending to show a permission or easement granted orally by Catterall at the time of the deed to Pulis, to permit Pulis to go across the Catterall land when the river was up. Catterall said he told Pulis when he sold the land that he could go across his land when the river was up; that Pulis never used it, but told him (Catterall) he never wanted to use it. He testified there was no road at all.

The evidence does not disclose that the way sought was a way of necessity. True, the section line was not formally opened, but evidence tends to show others had used that way; again, it may have been forced open by proper action. Pulis says in his brief, the trial judge viewed the premises. There is nothing in the record to warrant such statement. If the record showed the trial judge viewed the premises, our opinion as to a necessity shown might justify further consideration. Pulis testified the only other method of ingress and egress from his home to Chickasha was to fly, but the question contemplates a direct route to Chickasha, not a way of ingress and egress

to his land. The answer is a conclusion. Mr. Rider, plaintiff's witness, testified as to use of a bottom road which was sometimes muddy. (35 C-M.) Mr. Catterall testified as to use of the section line on the south edge of Pulis' place as a way out:

"Q. Do you know whether that scavenger man can pass and get to Mr. Pulis' land? A. I don't know, I would think he can. * * * I have seen the scavenger man going along there; I don't know whether it is a public passage way or not." (52 C.-M.)

We do not think the evidence warrants a view that the right to use of the roadway existed by prescription, but, on the other hand, that Pulis relied solely upon the language of the deed and sought construction of the word "appurtenances" to include a way of ingress and egress. "A thing is appurtenant to something else," says the federal court, Humphrey v. McKissock, 140 U. S. 304, 35 L. Ed. 473, "only when it stands in the relation of an incident to a principal and is **necessarily** connected with the use and enjoyment of the latter." Harris v. Elliott, 35 U. S. (10 Pet.) 25; Jackson v. Hathaway, 15 John, 447; Linthicum v. Ray, 79 U. S. (9 Wall.) 241.

In Woodhull v. Rosenthall, 61 N. Y. 382, it was held:

"It results from this definition that land can never be appurtenant to other land, or pass with it as belonging to it. * * * All that could be reasonably claimed, is that the word 'appurtenances' will carry with it easements and servitude used and enjoyed with the lands for whose benefit they were created. **Even an easement will not pass unless it is necessary to the enjoyment of the thing granted.**" Louisville & N. R. Co. v. Koelle, 104 Ill. 455.

It has been held easements cannot be established except by prescription or deed. Emerson v. Bergin (Cal.) 18 Pac. 264; Jensen v. Hunter (Cal.) 41 Pac. 14; Canfield v. Ford, 28 Barb. 336; Stokes v. Maxson (Iowa) 84 N. W. 949; Branson v. Studebaker (Ind.) 33 N. E. 98; Hoboken L. & I. Co. v. Kerrigan, 31 N. J. Law 13; Prentice v. McKay (Mont.) 98 Pac. 1081; Belser v. Moore (Ark.) 84 S. W. 219.

"It being an interest in land, it requires a deed or prescription. Dawson v. W. Md. Ry. Co. (Md.) 68 Atl. 301.

An easement can never pass by the use of the word "appurtenance" in a conveyance. Parker v. Meredith (Tenn.) 59 S. W. 167.

In Grant v. Chase (Mass.) 9 Am. Dec. 161, it was held:

"A way, when it is strictly a way of necessity, has been sometimes considered as falling under the same rule, and as passing to the grantee, or even being reserved to the grantor, without any express words of grant or reservation. In this case, however, it seems more correct to say that the way is newly created by the implied grant or reservation. But in the case at bar, the way and other privileges claimed by the defendants were not annexed to the sugar-house estate by any natural or legal necessity. It was a matter of ease and convenience only; which, as it must have arisen originally from the consent or agreement of the parties concerned, might be destroyed or extinguished in like manner. It cannot be distinguished from the common case of ways and easements, which are extinguished by unity of possession, and which cannot be claimed afterwards without a new grant." Parsons v. Johnson (N. Y.) 23 Am. Rep. 149; Polden v. Bostard, L. R. Q. B. 156; Goddard on Easements, secs. 70-74; Washburn on Easements, secs. 39-40.

So with all cases under examination it appears that a way of necessity is required to establish such a cause. A way of necessity is not proved by the evidence, although no doubt a convenience is established.

"A right of way from necessity only continues while the necessity exists. It is not enough that it continues to be from convenience, after it ceases to be indispensable to access to the land."

See, also, Thomas v. Morgan, 113 Okla. 212, 240 Pac. 735.

The burden is upon one claiming an easement to clearly establish such right. Herein the necessity of a way is not clearly established.

The cause is reversed and remanded for proceedings not inconsistent with views herein expressed.

LESTER, V. C. J., and CLARK, HEFNER, SWINDALL, and ANDREWS, JJ., concur.

HUNT, J., dissents. MASON, C. J., and CULLISON, J., absent.

Note.—See under (1) 9 R. C. L. p. 745; 2 R. C. L. Supp. p. 869; 4 R. C. L. Supp. p. 624; 6 R. C. L. Supp. p. 573; (2) 9 R. C. L p. 778; 2 R. C. L. Supp. p. 874; 4 R. C. L. Supp. p. 626. (3) 9 R. C. L. p. 728; 2 R. C. L. Supp. p. 867; 4 R. C. L. Supp. p. 623; 5 R. C. L. Supp. p. 527; 6 R. C. L. Supp. p. 573. (5) 9 R. C. L. p. 781; 2 R. C. L. Supp. p. 875; 4 R. C. L. Supp. p. 626. See "Adverse Possession." 2 C. J. §226. p. 132 n. 9. "Appurtenant." 4 C. J. p. 1471. n. 56. "Easements," 19 C. J. §1, p. 833, n. 11; §16, p. 873. n. 64; §53, p. 888, n. 79; §141, p. 937, n. 84; §181 p. 958. n. 37. "Frauds Statute of," §131, p. 193, n. 85.