G. A. NICHOLS, Inc., et al. v. STODDARD et al.

No. 34793.    April 1, 1952.

*242 P. 2d 742.*

Gilliland, Ogden, Withington & Shirk, Oklahoma City, for plaintiffs in error.

Arnold T. Fleig, Oklahoma City, for defendants in error.

BINGAMAN, J.    This action was brought by plaintiffs, Frank W. Stoddard, and others, owners of lots or residences in blocks 113, 114, 115 and 116, Nichols Hills Suburban Tracts to Nichols Hills, in Oklahoma county, to enjoin the defendants, G. A. Nichols, Inc., and G. A. Nichols Building Company, from destroying a sewer system serving the property in said blocks. Plaintiffs also sought a mandatory injunction, requiring the defendants to reconstruct a portion of the sewer system theretofore damaged by them, so that the system would function as previously and give adequate sanitation to their properties.    The trial court, after a hearing, granted a temporary injunction, at which time it was agreed between plaintiffs and defendants that without prejudice to the rights of plaintiffs, defendants could connect the properties of plaintiffs with another sewer system constructed by them and other landowners and connected with the city sewer system, and that upon a final hearing the trial court should deter-

mine whether plaintiffs should be required to pay for the connection with said new sewer system or whether the cost thereof should be borne by defendants. At the final hearing the trial court adjudged that the costs of the connection, which apparently had already been made, should be borne by the defendants, and rendered judgment accordingly. Defendants appeal.

From the record it appears that in 1938, the defendants platted and dedicated the property known as Nichols Hills Suburban Tracts to Nichols Hills, Oklahoma, and offered vacant lots, and lots with residences erected thereon by defendants, for sale to the general public; that in order to promote the sale of the properties and to enable defendants to obtain a better price therefor they represented to the earlier purchasers of lots or plots within the blocks above mentioned that the property would be served by an adequate sanitary sewer, and that later purchasers were advised that the sewer had been constructed and that the properties offered for sale to them were connected therewith. Pursuant to said representations defendants did construct a sewer line with laterals serving the residences of plaintiffs and other residents or lot holders in the blocks aforesaid, and in residences erected upon the property bathroom fixtures and other receptacles of waste were connected with and serviced by such sewer. A large septic tank was erected upon other property of the defendants some distance from the property of plaintiffs, and therefrom an outlet carried the waste matter into a sluice box from whence it was flowed into a small creek.

This sewer adequately serviced the properties of plaintiffs and other residents of said blocks for some ten or eleven years. In 1948, or early in 1949, defendants decided to plat and subdivide the acreage upon which the septic tank and disposal unit for the sewer were located. With other large property owners in that vicinity they arranged for the construction of another sewer known as the Northwest Sewage Disposal Company line, which was connected with the city sewerage system and which had its terminus on Grand avenue, a short distance south of the property owned by plaintiffs. In order to prepare for sale the tract upon which the septic tank and disposal plant were located, the defendants entered upon the land and with bulldozers and other machines leveled and graded it, in the course of which they injured or destroyed the disposal unit or a portion thereof, and seriously impaired the operation of the sewer. At about the same time they addressed letters to the residents of the affected blocks, advising them that they could connect with the new sewer a a cost of some $113.38 per residence; that the old sewer had been merely a temporary affair and must be discontinued. Plaintiffs refused to agree to the new arrangement and brought this action to restrain the further tearing up of the disposal unit and to require the restoration thereof so that the sewer would continue to adequately service their properties. As above stated, at the suggestion of defendants, the trial court permitted them to connect the sewer line serving the property of the plaintiffs with the Northwest Sewage Disposal Company's line on Grand avenue and adjudged that such connection should be made by the defendants at their own cost and that the plaintiffs and other residents of said blocks were not required to pay the sum of $113.38 per residence to defray the expense of the connection. In this connection the evidence discloses that while it was originally intended to build the Northwest Sewage Disposal Company line to a terminus at the south boundary line of Grand avenue, the defendants, by permission of the company, diverted the original line into the property which they were then engaged in platting and offering for sale, and agreed to construct the original line from the point of diversion to Grand avenue at their own expense, and that the sum of $113.38 per residence, in the affected blocks, was calculated to defray one-

half of the expense of the completion of said line to Grand avenue by defendants.

In this court defendants contend that the trial court erred in refusing to require the plaintiffs to pay their proportionate part of the expense of said new line for the reason that because of the building of the Northwest Sewage Disposal line to the vicinity of the property of plaintiffs, the need for an easement or servitude upon the lands of the defendants, upon which the septic tank and disposal unit were located, had ceased, citing McKenna v. Williams, 196 Okla. 603, 167 P. 2d 368, and cases from other jurisdictions. They also cite Catterall v. Pulis, 137 Okla. 86, 278 P. 292, holding that an easement for way is an interest in lands and cannot be created by parole grant, and that the mere permissive use of lands by another cannot give an easement by prescription. They also contend that an implied easement cannot be based upon convenience but must be reasonably necessary to the beneficial enjoyment of the land granted, citing Haas v. Brannon, 99 Okla. 94, 225 P. 931, and Bixby v. Cravens, 57 Okla. 119, 156 P. 1184.

Plaintiffs on the other hand contend that the right to use the sanitary sewer, and the septic tank and disposal unit upon the lands of defendant, constituted an appurtenance which was conveyed to them by the warranty deeds from the defendant, G. A. Nichols, Inc.; that it was necessary to the enjoyment of their property and therefore constituted an implied easement continuous in its nature, citing 16 O. S. 1951 §14, which states that the word "appurtenances" unless otherwise qualified, shall mean all improvements and every right of whatever character pertaining to the premises described, Anthony v. Barton, 196 Okla. 260, 164 P. 2d 642, and other authorities.

In 17 Am. Jur. p. 985, §79, it is stated that in order to support an easement as to drainage or sewerage, by implied grant, the easement must be reasonably necessary or convenient to the beneficial enjoyment of the property. An exhaustive note on easements by implication in respect to drains and sewers may be found at 58 A. L. R., beginning at p. 824. These authorities seem to support the contentions of plaintiffs.

While we are of opinion that under the authorities cited above and other authorities, plaintiffs had an easement upon the property of defendants, upon which was located the tank and disposal unit and that such right or easement was an appurtenance as defined by our statute, we think the judgment of the trial court in the instant case may be sustained without entering into a technical discussion of the nature and duration of easements by implication. From the record in the instant case it appears to be conceded by defendants that a sanitary sewer enhances the value of the property served by it, and makes it more readily saleable. It is not denied that at the time the blocks in which plaintiffs lived were offered for sale to the public the defendants, in order to promote their sale at a profit to themselves, represented to the prospective purchasers that they would connect the properties with an adequate sanitary sewer, and to later purchasers represented that the sewer had been constructed, and that the properties offered to them were connected therewith. And it further appears from the testimony of numerous plaintiffs that these representations greatly influenced them in purchasing properties in the affected blocks, and that they purchased in reliance upon these representations.

At the time the lots were being sold by defendants nothing was said by defendants or their agents to indicate that the arrangement was temporary only, and apparently it was considered by all parties that the arrangement was a permanent one, which would continue to serve the properties of the plaintiffs and be adequate to their needs. It was not until some ten years later, when defendants desired to put

their property on which was located the tank and disposal unit upon the market and subdivide the same and offer it for sale, that they conceived the idea that the arrangement was temporary only. The effect of the offer of defendants to construct said sewer and the payment by plaintiffs in some cases of an additional sum for the privilege of having their properties connected to the sewer, and in other cases their purchasing where they would otherwise not have purchased, and the erection of the sewer by defendants, constituted and was a completed contract between the parties, and imposed upon defendants the duty and obligation to furnish to plaintiffs adequate sanitary sewer facilities for so long as the property should be occupied for residence purposes.

Apparently the plaintiffs did not know just where the sewerage tank and disposal unit was located and were not interest in its location, and if defendants in order to place their land on the market had removed the septic tank and disposal unit to other land and properly connected it with the sewer serving plaintiffs, there would have been no objection on the part of plaintiffs. They were interested only in having their houses connected with adequate sewer facilities.

This being the obligation or duty assumed by the defendants at the time they sold the properties to plaintiffs, they could not thereafter, without the consent and against the wishes of plaintiffs, repudiate their obligation and destroy the sewer outlet and impair the operation of the septic tank so as to render the sewer valueless to plaintiffs, in order to make a profit from the sale of the lands upon which the tank and disposal unit were located, without making some provision by which plaintiffs would continue to receive adequate sanitary sewer service. Nor could they require plaintiffs, in order that the sewer service theretofore furnished them by defendants under their contracts be continued, to pay an additional sum to provide that which they had already bought and paid for. To hold otherwise would be to violate all the principles of justice and equity, and would enable the defendants to make contracts in which they imposed upon themselves binding and solemn obligations, and then break them with impunity. The trial court did not err in requiring the defendants to pay the cost of the new line and the connection of the line serving plaintiffs therewith.

Defendants call attention to the fact that in their plat and dedication of Nichols Hills Suburban tracts they provided that they should at all times have the right to vacate or extinguish easements and rights of way as to all or any portion of said property and argue that the plaintiffs, having purchased their property with constructive notice of this provision, are bound thereby, and that the defendants in destroying said sewer line and rendering it valueless to plaintiffs were within their rights reserved in the dedication. In other words they assert that by virtue of such reservation they could sell the property to plaintiffs serviced by electricity, gas, water and sewers, and then, after the property had been so disposed of, could cancel said easements and deprive plaintiffs of all these modern facilities. We do not agree. So far as the record shows, defendants own no property in the affected blocks. Unquestionably, upon the sale of the property with the easements in full force and effect, so that the property purchased was serviced with these modern conveniences, the right of defendants to cancel the easements no longer existed. In the instant case, the property having been bought by the plaintiffs and other residents of the affected blocks upon the express representation that the sewer would serve their properties, defendants are estopped to assert that by virtue of the reservation in the dedication they could deprive the plaintiffs of the right to use the sewer, or destroy or damage it to the injury or detriment of the plaintiffs.

Judgment affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur.