Lafayette CAYWOOD, Jessie Caywood Tice, Geraldine Caywood Sturdy, Juanita Caywood Hughes, Edna Caywood, Alene Caywood Buzzard and Leroy Caywood, Plaintiffs in Error,

v.

Fannie JANUARY, Defendant in Error.

No. 41831.

Supreme Court of Oklahoma.

May 27, 1969.

Feagins & Summerlin, John Charles Feagins, Claremore, for plaintiffs in error.

Riley Q. Hunt, Jay, for defendant in error.

JACKSON, Justice.

This is a quiet title action in which Fannie January, the widowed oldest daughter of Lizzie Caywood, a restricted, full-blood Cherokee Indian who died in 1933, sought to have her title to 100 acres of her mother's allotted lands quieted as against her mother's other six children, or the heirs of those who were deceased. Mrs. January claimed under a deed from her sister and five brothers and their respective spouses, executed and recorded about a month after her mother's death, and also claimed by adverse possession "for a period in excess of thirty years".

The deed is concededly void, not having been approved by the Secretary of Interior or by the county court having jurisdiction as required by law. However, the trial court held in effect that it constituted color of title or claim of right and quieted title in the plaintiff, Mrs. January, upon her claim of title by adverse possession. The defendants, one of Mrs. January's brothers, a sister, and the heirs of two deceased brothers, appeal. Her only other living brother testified in her favor in the trial court and is not a party to this appeal. We will refer to the parties hereinafter by name or as they appeared in the trial court.

In this court, defendants argue that the unapproved deed from the other heirs of Lizzie Caywood did not constitute "color of title" as to Fannie January, so as to satisfy the requirement that adverse possession must be under "claim of right or color of title".

Under the facts in this case color of title is not an essential element of adverse possession to obtain title by prescription under the provisions of 12 O.S. 1961, Section 93(4)—the fifteen year limitation period, and 60 O.S.1961, Sections 331, 332, and 333; Martin v. Cox et al., 31 Okl. 543, 122 P. 511. In the instant case the void deed may, however, be resorted to to ascertain the description of the land claimed and as evidence of a hostile claim against cotenants who signed the deed.

Since 1926 the Oklahoma statute of limitations, 12 O.S.1961, Sec. 93(4), supra, operates against restricted Indians of the Five Civilized Tribes. Kanuebbe v. McCuistion, 168 Okl. 165, 33 P.2d 1088; Wolfe v. Phillips, 172 F.2d 481, cert. den. 336 U.S. 968, 69 S.Ct. 941, 93 L.Ed. 1119.

Claim of right means the intention of the disseizor to appropriate and use the land as his own to the exclusion of all others, irrespective of any actual title or right, and it has been said that if the claim is hostile it is "under a claim of right." 2 C.J.S. Adverse Possession § 55; 3 Am. Jur.2d Adverse Possession, Sec. 96.

Defendants argue generally, under two propositions, that the party claiming title by adverse possession has the burden of proving all the facts necessary to establish such a title; that adverse possession is to be taken strictly, with every presumption in favor of a possession in subordination to the rightful owners; and that as between cotenants who are brothers and sisters, the mere possession of one, no matter how full and complete, does not operate as an ouster of the others.

In argument under these propositions, defendants in effect question the sufficiency of the evidence to support the judgment.

It may be conceded that the evidence was in conflict on some points, but the trial court's judgment resolved these conflicts in plaintiff's favor. Briefly summarized, the evidence showed that plaintiff had lived on the place for about fifty years at time of trial, having moved onto it shortly after her marriage to Bill Jan-

uary. Her mother also lived there, visiting occasionally in the homes of her other children. The mother, Lizzie Caywood, died in 1933. At that time none of the children had any money with which to pay her funeral bill, and the other children, with their spouses, executed a warranty deed conveying the premises to plaintiff. Mrs. January testified that "they deeded it to me to pay the funeral bill" and "they all agreed for me to have it", and that she had claimed it since that time. Her testimony was corroborated generally by that of her brother, Bruce. She and her husband borrowed money with which to pay the funeral bill, giving a mortgage on the premises as security. They paid off the promissory note, and obtained a release of the mortgage, by 1940. During all of the years following the death of Mrs. Caywood, the place was farmed and managed by plaintiff and her husband, except for about a year and a half when they lived in or near Cleveland, Oklahoma. During this period they leased the place to Lee January, the husband's brother, and collected the rents from him. About 25 years prior to trial, plaintiff and her husband built a new house on the premises. They also built a new barn and granary, and fenced the premises.

■ During this time plaintiff's brothers and sister were always welcome and visited her often, staying for varying lengths of time. However, they never made any kind of claim to the place, never helped farm or operate it, and never asked for any kind of an accounting for the profits from it. Plaintiff's brother, Bruce, testified that they all came to her place when they had no other place to go— "when they got hungry". Another brother, Albert, spent the last 20 years of his life with plaintiff and her husband. However, there is no evidence that he ever claimed any interest in the place, and no competent evidence that he intended the deed he signed in 1933 with the other children to be anything less than it purported on its face to be—a conveyance of all of his interest in the premises. There was testimony from several long time residents of the community that the Januarys were generally reputed to be the owners of the place. Where, as here, the fact of actual possession is otherwise shown, it is generally held that evidence of reputation as to ownership is admissible for the purpose of showing the adverse character of the possession, and the openness and notoriety thereof. See annotation at 40 A.L.R.2d 771, 773.

■ The record justifies the conclusion reached by the trial court that for over thirty years, plaintiff occupied the premises under claim of right, openly and notoriously exercising all the incidents of ownership, managing and farming the lands, fencing it, making improvements thereon, mortgaging it and redeeming it from the lien of the mortgage, and leasing it out and collecting the rents, all with the full knowledge of her sister and brothers, who had executed a deed purporting to convey title thereof to plaintiff.

Defendants argue in effect that although such evidence might have been sufficient to establish title by adverse possession against persons otherwise strangers, it is not sufficient to establish such a title as against cotenants who are brothers and sisters. In this connection, they cite Westheimer v. Neustadt, Okl., 362 P.2d 110, and similar cases, to the effect that there must be an "actual ouster" or some act or acts amounting to a "total denial" of the rights of the cotenants, with notice thereof "brought home" to them.

At 82 A.L.R.2d 5 there is an exhaustive annotation upon the general subject of what constitutes adverse possession as between cotenants. The conclusion of the annotator is stated as follows (page 23):

> "A cotenant, whether a tenant in common or a joint tenant, may undoubtedly hold the common premises adversely to his cotenant or cotenants, and in such fashion as eventually to ripen his claim into title against them, even though his possession was commenced amicably as

a cotenant. To establish that his possession was adverse he must show that at the time in question he was personally, or by tenant or agent, in actual possession of the premises * * *, that he intended an actual adverse possession operative as of that time, that he did in fact hold and claim the premises adversely, and, lastly, that his cotenant or cotenants had knowledge or notice of that fact."

It is further said (page 24) :

" * * * the conclusion which may reasonably be drawn is that outward or notorious acts of exclusive ownership, in whatever terms particularly described, are not essential in any instance in which *the hostile character of the possession is otherwise distinctly manifested and the facts thereof brought home to the possessor's cotenants.*" (Emphasis supplied.)

These conclusions were reached in the face of "emphatic and unqualified propositions" stated by courts of most of the jurisdiction of this country, including this one, to the general effect that in order for one cotenant to render his possession adverse to another, there *must* be "an actual ouster", or some act or acts of disseizin or exclusive ownership making manifest the fact of hostile holding and carrying knowledge or notice thereof to the other cotenants. See, for instance, Longfellow v. Byrne, 68 Okl. 314, 174 P. 745; Douglas v. Mounce, Okl., 303 P.2d 430; Wirick v. Nance, 178 Okl. 180, 62 P.2d 997.

Under the evidence in the instant case the execution of the deed in 1933 by all of the then heirs of Lizzie Caywood, and her continued occupancy of the premises, acquiesced in by the others, constitutes a recognition of plaintiff's superior right.

The trial court's finding for plaintiff included an implied finding that, although the deed was ineffective because not approved as required by law, it was nevertheless executed by grantors with the good-faith intention that it should convey full title to plaintiff. We hold that grantor's own act in executing this deed sufficiently "brought home" to them, and their successors in interest, the fact that plaintiff's possession was under claim of right and adverse to them.

 It is well settled that a quiet title action is an action of equitable cognizance. The judgment of the trial court in an action of equitable cognizance will not be disturbed on appeal unless it is clearly against the weight of the evidence. Priddy v. Shires, 204 Okl. 664, 233 P.2d 298. After a careful review of the evidence in this case, we cannot say that the judgment is clearly against the weight thereof.

The judgment of the trial court is therefore affirmed.

All the Justices concur.