GRAND CREST OWNERS ASSOC. v. STITES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:GRAND CREST OWNERS ASSOC. v. STITES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 GRAND CREST OWNERS ASSOC. v. STITES
2022 OK CIV APP 16
Case Number: 117433
Decided: 08/06/2020
Mandate Issued: 05/25/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 16, __ P.3d __

 

GRAND CREST OWNERS ASSOCIATION, INC., an Oklahoma Not for Profit Corporation, Plaintiff/Appellant,
v.
JEFFRY T. STITES, an individual, a/k/a JEF T. STITES; BEVERLY L. STITES, an individual, a/k/a BEVERLY STITES; GRAND CREST ASSOCIATION, INC., an Oklahoma Corporation; and O'CONNOR LEGACY HOME, LLC, Defendants/Appellees.
APPEAL FROM THE DISTRICT COURT OF
MAYES COUNTY, OKLAHOMA
HONORABLE TERRY H. MCBRIDE, TRIAL JUDGE
REVERSED AND REMANDED WITH INSTRUCTIONS
Sam P. Daniel, III, SAM P. DANIEL, III, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellant
Jef Stites, LAW OFFICE OF JEF STITES, PLLC, Tulsa, Oklahoma, for Defendants/Appellees Jeffry T. Stites, Beverly L. Stites, and Grand Crest Assoc.
Gregory P. Reilly, HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C., Tulsa, Oklahoma, for Defendant/Appellee O'Connor Legacy Home, LLC
JOHN F. FISCHER, JUDGE:
¶1 Grand Crest Owners Association, Inc. (Grand Crest), appeals the district court's September 18, 2018 Order granting the motions for partial summary judgment filed by Jeffry and Beverly Stites and their corporation, Grand Crest Association, Inc. (collectively the Stites), and O'Connor Legacy Home, LLC. The district court certified its order for immediate appeal pursuant to 12 O.S.2011 § 994(a). The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without appellate briefing.
¶2 The order appealed quieted title to certain real property owned by O'Connor and the Stites, "subject to easement rights," on the basis that there was no Grand Crest association with any authority over the defendants' lots. The property involved in this case originally was conveyed by Grand Crest subject to the covenants and restrictions in the corporation's bylaws. The Stites and O'Connor acquired their interests in that property subject to those covenants and restrictions. Further, they agreed to be bound by those covenants and restrictions when they acquired their interests in the property. Therefore, we reverse the order appealed and remand for further proceedings.[1] 

BACKGROUND

¶3 Grand Crest Association, Inc., was formed on May 27, 1954.[2] At its organizational meeting on September 4, 1954, Grand Crest adopted bylaws and elected a board of directors to serve until the corporation's first annual meeting set for January of 1955. According to its bylaws, Grand Crest was formed for the purpose of establishing and maintaining "a non-profit association for the social pleasure and enjoyment of its members; to acquire, hold and dispose of such property, both real and personal, as the purposes of the corporation shall require . . . for the use and benefit of its members." The corporate purpose also included providing "such services as the members of the corporation may deem necessary or desirable for their pleasure and enjoyment."
¶4 Grand Crest acquired the property involved in this case on June 2, 1954. The property, previously used as a work camp, contained twenty cabins. Grand Crest prepared a plat dividing the property into four blocks and certain designated streets. Block 1 was divided into twenty lots, the eastern boundary of which abutted the shoreline of Grand Lake of the Cherokees in Mayes County. One of the cabins was located on each of the lots. Grand Crest also prepared an Owner's Certificate of Dedication and Assurance designating the property as Grand Crest Subdivision. Grand Crest recorded the Dedication and plat with the Mayes County Clerk on December 21, 1954. The bylaws of the corporation were not recorded until 1991.
¶5 The Grand Crest bylaws provided that there would be nineteen shareholders of the corporation. Ownership of stock in the corporation was limited to those who would acquire one or more of the twenty lots in the Subdivision -- the owners of lots three and four were limited to one share of stock. The bylaws provided that the owner of each lot would be entitled to one share of, or membership in, the corporation and that each share "shall be appurtenant to the respective lot owned by the member and shall not be transferable except in conjunction with the transfer of title to the respective lot to which it is appurtenant . . . ."
¶6 Accordingly, the stock certificate issued to each purchaser of a lot in the Grand Crest Subdivision provided that the holder was: "entitled to all the privileges of a member [of Grand Crest] and to a pro-rata interest in all the property and assets of the corporation, subject to the by-laws thereof now in force and hereafter adopted, such by-laws being deemed to be an essential part of the contract of membership between the corporation and the member." At that time, the assets of the corporation included blocks 2, 3 and 4 of the Subdivision, the streets and common areas, the caretaker's quarters, buildings, pump stations and tools.
¶7 Three lots in the Subdivision, 18, 19 and 20, are at issue in this case. The Stites acquired their interest in lots 18 and 19 in 1998 and 2002, respectively. O'Connor acquired its interest in lot 20 on March 17, 2014. When they acquired their interests in the Subdivision, the Stites and O'Connor were issued and accepted stock in the corporation. The stock certificates were issued pursuant to the corporation's bylaws. After acquiring their lots in the Subdivision, the Stites paid membership dues and assessments to Grand Crest and attended meetings of the corporation. O'Connor paid the dues owed by its predecessor in title at the time it acquired its interest in lot 20.
¶8 In 2012, South Shore at Grand Lake, LLC, began plans to develop real property immediately north of the Subdivision and adjacent to lots 18, 19 and 20. The Stites and O'Connor supported that development. Eventually, a dispute arose between the South Shore developer and Grand Crest members. That dispute precipitated this lawsuit and the summary judgment rulings that are the subject of this appeal.
STANDARD OF REVIEW
¶9 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment in this case. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, the district court considers factual matters but the ultimate decision is purely legal. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. The de novo standard controls an appellate court's review of a district court order granting summary judgment. Id. De novo review involves a plenary, independent, and non-deferential examination of the trial court's rulings of law. Neil Acquisition, L.L.C. v. Wingrod Invest. Corp., 1996 OK 125, n.1, 932 P.2d 1100.
ANALYSIS
¶10 Grand Crest filed this action generally alleging that the Stites and O'Connor breached the covenants and restrictions in the corporation's bylaws and refused to pay properly assessed dues and assessments. Grand Crest seeks to recover those unpaid dues and assessments, damages for breach of the corporation's building restrictions, to obtain declaratory and injunctive relief and to quiet title with respect to the corporation's interest in lots 18, 19 and 20 resulting from the applicable covenants in the corporation's bylaws.
¶11 The district court specifically declined "to determine the existence or non-existence of a home owners association" that might have some other rights regarding the property. Neither party contends that the stockholders of Grand Crest constitute an "owners association" as defined in 60 O.S.2011 § 852, or that the property involved in this suit is subject to the Real Estate Development Act, 60 O.S.2011 §§ 851 through 858. Therefore, we assume that the Act does not apply and look to other sources of law to resolve this appeal.
¶12 For example, Grand Crest is an Oklahoma corporation governed by the Oklahoma General Corporation Act, 19 O.S.2011 §§ 1001 through 1144. The bylaws involved in this appeal were first adopted by the original "shareholders entitled to vote." Id. § 1013(A). Bylaws of a corporation "may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its shareholders, directors, officers or employees." Id. § 1013(B). The Grand Crest bylaws provide that the corporation's business and affairs are to be conducted by a board of directors elected by the stockholders of the corporation.
¶13 The bylaws also contain certain restrictions on the sale of corporate stock. In this regard, the Act provides: "A restriction on the transfer . . . of securities of a corporation . . . may be imposed . . . by the bylaws or by an agreement among any number of security holders or among such holders and the corporation." Id. § 1055(B). One such provision permits a corporation to require "the holder of the restricted securities to offer to the corporation or to any other holders of securities of the corporation . . . a prior opportunity, to be exercised within a reasonable time, to acquire the restricted securities." Id. § 1055(C)(1). The central issue in this appeal is whether certain restrictions in the Grand Crest bylaws can be enforced against subsequent grantees of the original Grand Crest shareholders and, particularly, the defendants.
I. The Defendants' Motions for Partial Summary Judgment
¶14 In their summary judgment motions, the Stites and O'Connor asserted two propositions. First, they argued that to be enforceable the restrictions in the Grand Crest bylaws were required to be included in the dedication and plat creating the Grand Crest Subdivision recorded in 1954, or in the deeds from Grand Crest to the original purchasers of the lots in the Subdivision, their predecessors in title. Because neither instrument contains those covenants, they contended that the restrictions in the Grand Crest bylaws do not apply to them. Second, they argued that the bylaws which were eventually recorded in 1991 do not burden the lots they own. According to Stites and O'Connor, Grand Crest had conveyed away all of its interest in their lots prior to recording the 1991 bylaws and, therefore, had no ability to retroactively alter or burden the interest previously conveyed. Neither proposition supports the judgment in favor of the Stites or O'Connor.
A. The Interest Originally Conveyed by Grand Crest
¶15 The three lots involved in this case were part of the original 1954 plat and dedication for the Grand Crest Subdivision. As stated, the original version of the Grand Crest bylaws was adopted at the corporation's organizational meeting in September of 1954. The bylaws are in writing and signed by the proper corporate officials and satisfy the requirement for writings affecting real estate. See 15 O.S. Supp. 2013 § 136, and 16 O.S.2011 § 4. But the bylaws were not recorded at the same time that the dedication and plat were first recorded in 1954.
¶16 However, at the annual meeting on July 6, 1991, all sixteen members of Grand Crest attending that meeting voted to amend Article X of the corporation's bylaws by adding a provision that preserved the validity and enforceability of the bylaws should one provision be declared invalid. The members then voted to record the amended bylaws with the Mayes County Clerk. A document titled ByLaws and Restrictive Covenants of Grand Crest Association, Inc., was recorded on September 4, 1991. The recorded bylaws contain the newly adopted survivability provision but are otherwise identical to the bylaws first adopted by the members in 1954.
¶17 Article VI of the bylaws provides certain restrictions on the sale of lots in the Subdivision: "Alienation of lots in Grand Crest . . . and transfer of memberships in this corporation shall not be effected except as hereinafter provided." That Article then provides that a member shall provide the president of the corporation written notice of the member's desire to sell and attach an application for membership in the corporation of the proposed buyer. The other members of the corporation are permitted ten days to object and, if more than ten members object, the proposed sale is rejected. If the proposed sale is not rejected, a new membership/stock certificate is issued to the buyer and the seller's ownership of Grand Crest is terminated. Section 2 of Article VI provides that a member desiring to sell must also first notify the other members of the corporation and negotiate in good faith with any member desiring to purchase the selling member's lot. There is no contention that these restrictions are prohibited by the Oklahoma General Corporation Act.
¶18 Article VIII of the bylaws contains certain building restrictions limiting a member's ability to modify the existing cabin located on the lot associated with the member's stock in the corporation. Article XI provides that a majority of the members may levy an assessment binding on all members of the corporation. Pursuant to that authority, a majority of the members have voted to levy dues and assessments to pay for maintenance of the streets, roads and common areas, the services of a caretaker, trash pickup and disposal, and insurance and other expenses benefitting all of the members. Article X, Section 3 provides: "These by-laws shall constitute a binding contract between the corporation and its members, and shall be binding upon their heirs, successors, and assigns." Nothing in these restrictions is prohibited by the General Corporation Act.
¶19 Clearly, provisions in the Grand Crest bylaws entitle the corporation to collect dues and assessments from the owners of the lots in the Subdivision and to enforce the building and transfer of ownership restrictions previously discussed. For three reasons, we hold that the interest in the lots originally conveyed by Grand Crest to the defendants' predecessors in title are subject to the corporation's bylaws.
B. The Bylaws Were Part of a Development Plan
¶20 It is undisputed that the property involved in this case was part of the original plan and development for the Grand Crest Subdivision as described in the dedication and plat recorded on December 21, 1954. The three lots specifically at issue were initially acquired from Grand Crest by Vaughn Bryan (lot 18), W. O. Palmer (lot 19) and Joseph W. Moorman (lot 20). Bryan acquired his interest in lot 18 from Grand Crest pursuant to a general warranty deed dated December 28, 1954. In that deed, Grand Crest reserved a perpetual easement "for installation and maintenance of such utilities as it may deem necessary for the common use and enjoyment of its members." Palmer acquired his interest in lot 19 pursuant to a general warranty deed from Grand Crest dated May 31, 1975.[3] Grand Crest issued a general warranty deed to Moorman for lot 20 on December 28, 1954. This deed also reserved a perpetual utility easement identical to the easement in the deed to Bryan.[4] 
¶21 The Stites and O'Connor point to well-established principles of property law to argue that the warranty deeds from Grand Crest to their predecessors in title conveyed "to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described." 16 O.S.2011 § 19. They contend that the warranty deeds from Grand Crest are deemed to have conveyed "an estate in fee simple and of inheritance, unless limited by express words." 16 O.S.2011 § 29. Because the only "express words" in these warranty deeds limiting the interest conveyed by Grand Crest concern the utility easement, the Stites and O'Connor conclude that they are entitled to quiet title to their property against any other interest claimed by Grand Crest, including any covenants or restrictions contained in the Grand Crest bylaws. The district court agreed: "title is quieted in the Defendants as to those lots [18, 19 and 20] against the plaintiff subject to easement rights that may or may not be owned by the plaintiff."

¶22 The Stites and O'Connor rely solely on the law of conveyances to support their argument. Their argument fails. This is an equitable proceeding. Caywood v. January, 1969 OK 87, ¶ 17, 455 P.2d 49 (noting that an action to quiet title is one of equitable cognizance). And the issue is whether the defendants are subject to the restrictive covenants on the use of their lots set out in the bylaws established in 1954 when Grand Crest dedicated the property and established the Subdivision.
It has long been an established principle that an agreement restricting the use of land in a certain tract, imposed thereon by a common grantor under a general improvement plan, intended for the mutual benefit of all grantees therein may be enforced in equity by any subsequent grantee in such tract, who purchased with reliance on the general plan, against any other subsequent grantee taking with notice of the restrictions. 
Southwest Petroleum Co. v. Logan, 1937 OK 473, ¶ 14, 71 P.2d 759. The restrictive covenants that the defendants challenge were imposed by Grand Crest on all of the lots in the Subdivision under a general plan intended for the mutual benefit of all lot owners. Consequently, the current members of Grand Crest, as subsequent grantees of lots in the Subdivision, are entitled to bring this action.
¶23 Also, the Oklahoma Supreme Court has specifically rejected the argument that restrictions on the use of land "can be established by the method of platting and public dedication alone . . . ." Williamson v. Needles, 1942 OK 409, ¶ 13, 133 P.2d 211. Contrary to the defendants' argument, restrictions on the use of land "may be established in one of several ways." Id.
¶24 As to the original grantees, it does not matter that the 1954 bylaws were not recorded, referenced in the dedication and plat of the Subdivision or specifically incorporated in the initial deeds from Grand Crest. Restrictions on the use and enjoyment of land made for the mutual benefit of adjoining landowners "need not rise to the dignity of a grant or reservation, but create an equitable right in the nature of an easement, enforceable in equity against all persons taking with notice . . . ." Logan, 1937 OK 473, ¶ 15. "One who takes land with notice of a restrictive agreement affecting it cannot equitably refuse to perform it, though the agreement may not be a covenant which runs with the land, or creates a technical qualification of the estate conveyed." Id. ¶ 14. "Thus, in an action by the grantor to enforce the restrictions against subsequent grantees, the question is solely one of notice . . . ." Id. ¶ 16. See also G.A. Nichols Inc., v. Stoddard, 1952 OK 131, 242 P.2d 742 (holding that a developer's promise of sewer access as inducement to purchaser, but not contained in plat or deed, constituted an enforceable easement over developer's land).
C. The Original Purchasers Had Notice of the Bylaws
¶25 The notice required to enforce restrictive covenants may be "actual or constructive." Logan, 1937 OK 473, ¶ 18. Recording satisfies the constructive notice requirement. But, in the absence of a recorded instrument, actual notice of the covenants is equally effective notice. See Morton v. Clearview Homes, 1958 OK 55, ¶ 0, 324 P.2d 543 (Syllabus by the Court) ("Where one acquires title to a lot with actual notice of restrictive covenants . . . he takes title thereto burdened with such restrictive covenants."). On the same day Bryan first acquired his interest in lot 18 from Grand Crest, in December 1954, he was issued and accepted stock certificate number 18 representing one share of Grand Crest corporate stock "subject to the by-laws thereof . . . such by-laws being deemed to be an essential part of the contract of membership between the corporation and the member." Stock certificate number 26 was issued to and accepted by Palmer on January 7, 1958. Stock certificate number 20 was issued to and accepted by Moorman on December 28, 1954. These certificates are identical to the stock certificate issued to Bryan and also provide that the holder has agreed to abide by the Grand Crest bylaws. Consequently, Bryan, Palmer and Moorman had actual notice of the restrictive covenants in the Grand Crest bylaws at the time they purchased their lots in the Subdivision and the restrictive covenants in those bylaws are enforceable in equity.
¶26 Not only do principles of equity support application of the covenants in the bylaws, but also they are enforceable as a matter of contract law. As stated in the stock certificates, "an essential part" of the consideration for the initial sale of these lots was the purchaser's agreement to be bound by the Grand Crest bylaws. The bylaws "constitute a binding contract between the corporation and its members." Grand Crest By-laws Article X, Section 3. That contractual agreement, even though it does not appear in the chain of title, is nonetheless enforceable. One who accepts an interest in land subject to certain contractual obligations is bound by that contract. See CIT Bank, N.A. v. Heirs of McGee, 2019 OK CIV APP 36, 444 P.3d 496; Falconhead Prop. Owners Ass'n v. Fredrickson, 2002 OK CIV APP 67, 50 P.3d 224. In those cases, as here, the contractual obligation compels enforceability of the bylaws restrictions.
¶27 As evidenced by their stock certificates, Bryan, Palmer and Moorman not only took title to their respective lots with notice of the covenants and restrictions in the Grand Crest bylaws, but also they voluntarily agreed to be contractually obligated to abide by those covenants and restrictions, including the agreement to sell their lots only to someone who also was willing to agree to be bound by the corporation's bylaws. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone . . . ." 15 O.S.2011 § 155. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." 15 O.S.2011 § 158. The restrictive covenants in the Grand Crest bylaws applicable to lots 18, 19 and 20 through the stock purchase contract created "an equitable right in the nature of an easement, enforceable in equity against all persons taking with notice, even if it rests on no broader principle than that equity will enforce a proper contract concerning land." Southwest Petroleum Co. v. Logan, 1937 OK 473, ¶ 15, 71 P.2d 759.
D. Bylaw Rights Granted to Grand Crest Burden Lots 18, 19 and 20.
¶28 Even the law of conveyancing fails to support the defendants' motions for summary judgment. Grand Crest retained ownership of Blocks 2, 3 and 4 in the Subdivision. The only access to the lots in the Subdivision owned by the shareholders of Grand Crest including the Stites and O'Connor is across the streets located on the property retained by Grand Crest. The right of access to those lots across the streets owned by Grand Crest is an appurtenance to each of the lots in the Subdivision and was guaranteed to each of the original lot owners through the bylaws when they acquired their stock in the corporation and their lots in the Subdivision. "A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way . . . from or across the land of another." 60 O.S.2011 § 8. Grand Crest's warranty deeds to Bryan, Palmer and Moorman confirmed this right when transferring ownership of the lots "together with all . . . appurtenances thereto."
¶29 But it is equally true that correlative to the access rights granted to lot owners was the right of the corporation to assess its members for the cost of maintaining the streets retained by Grand Crest. That right is also established by the bylaws and is appurtenant to each of the lots in the Subdivision. See 60 O.S.2011 § 49(13) (the right of receiving more than natural support from adjacent land is an appurtenance which burdens the land). "Equity will recognize and enforce the mutual and reciprocal rights involved." Williamson v. Needles, 1942 OK 409, ¶ 20, 133 P.2d 211.
¶30 The Stites and O'Connor are correct in arguing that an easement constitutes a burden on the fee simple estate. They are not correct in assuming that because they received a warranty deed to their lots, the utility easement specifically referenced in those deeds is the only easement to which their land is subject. The equitable rights created by the restrictive covenants in the bylaws "in the nature of an easement" also limit the estate granted to Bryan, Palmer and Moorman by Grand Crest and, therefore, the estate those original owners subsequently were able to convey with respect to lots 18, 19 and 20. In Oklahoma, a grantor's execution and delivery of a warranty deed conveys his "whole interest . . . in the premises described," 16 O.S.2011 § 19, and the fact that the grantor "may own less than the entire fee does not prevent his passing title, by said deed, to the interest he does own." Beaton v. Pure Oil Co., 1971 OK 27, ¶ 9, 483 P.2d 1145.
¶31 Consequently, as to their first proposition, the Stites and O'Connor have failed to show, as a matter of law, that Grand Crest deeded all of its interest in lots 18, 19 and 20, other than a utility easement, when it sold that property to Bryan, Palmer and O'Connor. The initial purchasers of those lots had actual notice of and agreed to be bound by the restrictive covenants in the Grand Crest bylaws. And, those bylaws, as part of a general improvement plan for the benefit of all lot owners were enforceable against Bryan, Palmer and Moorman.
II. The Interest Acquired by the Stites and O'Connor
¶32 The Stites and O'Connor acquired their interests in the Subdivision pursuant to general warranty deeds. As previously discussed, the sellers who executed those deeds could only convey the estate that they owned and the lots they owned were subject to the restrictive covenants in the Grand Crest bylaws. There are, however, additional reasons why the Stites and O'Connor lots are subject to those covenants.
¶33 The deed for lot 19 to the Stites was executed on June 30, 1998, and their deed to lot 18 was executed on April 2, 2002. Both lots were conveyed to the Stites subject to: "Easements and building restrictions of record." O'Connor's 2014 deed conveyed all of the seller's interest subject to "covenants, conditions, easements, restrictions and mineral interests of record." It is undisputed that the 1991 version of Grand Crest's bylaws had been filed with the Mayes County Clerk on September 4, 1991, before the Stites or O'Connor acquired their respective interests in lots 18, 19 and 20. Attached to those bylaws is a copy of the plat of the Subdivision previously recorded by Grand Crest in 1954. As previously discussed, the only substantive difference between the 1954 and 1991 versions of the bylaws was the addition of a survivability provision in Article X, section 4, a difference not material to this case. Consequently, the restrictive covenants in the Grand Crest bylaws were filed "of record" by the time either the Stites or O'Connor acquired their respective interests in lots 18, 19 and 20. That recording provided the defendants with constructive notice of the restrictive covenants in the bylaws. Southwest Petroleum Co. v. Logan, 1937 OK 473, 71 P.2d 759.
¶34 The defendants' reliance on Magnolia Petroleum Co. v. Drauver, 1938 OK 545, 83 P.2d 840, does not advance their argument. In that case, a mortgage was granted before a subdivision was created. Consequently, the mortgage holder's interest was not burdened by subsequently recorded restrictive covenants with respect to lots in the subdivision which had not been sold. However, with respect to lots sold after the covenants in a plat and dedication had been recorded and the mortgage released as to those lots, foreclosure of the mortgage did not affect the title held by those lot owners. Id. ¶ 17.
¶35 Here, the Grand Crest Subdivision had been created as evidenced by a recorded dedication and plat prior to the sale of any lots in the Subdivision. The subsequent recording of the bylaws in 1991 is more on point with the facts in Morton v. Clearview Homes, 1958 OK 55, 324 P.2d 543. There, the original purchaser of a lot in a subdivision, who had actual knowledge of restrictive covenants, took title subject to those covenants even though the covenants had not been recorded at that time. Grantees of the original owner who acquired their interest after the covenants had been recorded also took their interest subject to the covenants.
¶36 As the Morton Court noted, "if after the plat and dedication containing such restrictive covenants have been placed of record [the original owner] sells such lot to another, his grantee will take title burdened with such restrictions where such grantee's title is necessarily deraigned back to and through the plat and dedication containing such restrictive covenants." Id. ¶ 0 (Syllabus by the Court).
¶37 Further, as "an essential part" of their acquisition of these lots, the Stites and O'Connor agreed to be bound by the Grand Crest bylaws as evidenced by the stock certificates they received and accepted when they became stockholders in Grand Crest. Just as Bryan, Palmer and Moorman voluntarily obligated themselves to abide by the Grand Crest bylaws in order to acquire their lots in the Subdivision, so too did the Stites and O'Connor agree to those bylaws when they accepted their stock in the corporation and acquired their interest in lots 18, 19 and 20. And, the Stites and O'Connor recognized the binding effect of the bylaws at that time. They have paid dues assessed by the corporation pursuant to its bylaws, and the Stites have actively participated in corporate meetings and the business of Grand Crest.
¶38 In addition, the Stites and O'Connor have also benefitted from the work of the corporation in maintaining the roads over which they have access to their lots, in acquiring and maintaining water, sewer and trash disposal services, and in maintaining the common areas and similar activities "for the social pleasure and enjoyment of its members." The Stites and O'Connor have pointed to no principle of law which would, for example, permit them to require one party to maintain and provide access to a road but excuse the other party from its agreement to pay for part of the maintenance of that road after accepting the benefits of that access. The applicable law is to the contrary. "Any person or corporation, having knowingly received and accepted the benefits or any part thereof, of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract . . . ." 16 O.S.2011 § 11. The Grand Crest bylaws constitute a contract relating to real estate between the corporation and its stockholders, the benefits of which the Stites and O'Connor have not only knowingly accepted, but also contractually obligated themselves to follow.
¶39 The order granting the motions for partial summary judgment in favor of the Stites and O'Connor is reversed. "To hold otherwise would be to violate all the principles of justice and equity, and would enable the defendants to make contracts in which they imposed upon themselves binding and solemn obligations, and then break them with impunity." G.A. Nichols Inc., v. Stoddard, 1952 OK 131, ¶ 10, 242 P.2d 742.
III. Grand Crest's Motion for Partial Summary Judgment
¶40 In its motion for partial summary judgment, Grand Crest sought to establish that that its bylaws were "valid and subsisting and quiet the title thereto as against the Defendants Stites and O'Connor." The district court denied this relief. For the same reasons that we found that the district court erred in granting the Stites and O'Connor motions for partial summary judgment, we also find that Grand Crest has demonstrated that it is entitled to relief as a matter of law, and that the restrictive covenants in its bylaws are enforceable against the interests of the defendants in lots 18, 19 and 20.
[5] "There is no question that a personal covenant or agreement affecting lands will be held valid and binding in equity on a purchaser taking the estate with notice, and it is immaterial that the agreement may not be a covenant which runs with the land." Blackard v. Good, 1952 OK 309, ¶ 8, 248 P.2d 596.
¶41 There are, however, issues of fact which cannot be resolved on the basis of this record in order to determine the extent of the relief to which Grand Crest is entitled. For example, none of the parties' motions for partial summary judgment resolve the issues of fact concerning the location and use of a possible utility easement with respect to lot 19. It may be that Grand Crest acquired such an easement by prescription or does not assert that it has a utility easement regarding lot 19.
¶42 Further, the facts concerning the defendants' involvement with the South Shore development and any possible breach of the Grand Crest bylaws resulting therefrom have not been developed. The facts concerning any unpaid dues and assessments owed by the defendants have not been addressed. Consequently, this Court cannot grant a judgment in favor of Grand Crest based on this record. Nonetheless, this Opinion does resolve the issue of the general applicability of the restrictive covenants in the Grand Crest bylaws to the lots owned by the Stites and O'Connor. On remand, the district court shall determine the extent of the relief to which Grand Crest is entitled and enter a judgment consistent with this Opinion.
CONCLUSION
¶43 In this equitable proceeding, we have independently reviewed the record and the evidence. Story v. Hefner, 1975 OK 115, ¶ 12, 540 P.2d 562. The restrictive covenants in the Grand Crest bylaws are enforceable against the lots in the Subdivision owned by the Stites and O'Connor. The partial summary judgment in favor of the Stites and O'Connor is reversed. The order denying Grand Crest's motion for partial summary judgment is also reversed, and the case is remanded with instructions for further proceedings consistent with this Opinion.
¶44 REVERSED AND REMANDED WITH INSTRUCTIONS.
BARNES, P. J., and THORNBRUGH, J. (sitting by designation), concur.
FOOTNOTES
[1] Grand Crest also appealed the district court's February 27, 2019 order granting the Stites' and O'Connor's motions for costs and attorney fees. Because we reverse the order granting the motions for partial summary judgment in favor of the Stites and O'Connor, determination of the costs and attorney fee issue is premature. The district court's February 27, 2019 order granting costs and attorney fees is vacated.
[2] Grand Crest Association, Inc., originally was incorporated with a charter that provided for a fifty-year existence. In 2004, the corporation inadvertently allowed that charter to lapse. On February 5, 2013, Stites formed a new corporation but used the Grand Crest Association, Inc., name. On February 22, 2013, the original Grand Crest corporation was reinstated under a new name, Grand Crest Owners Association, Inc. That name was selected because its original name had been taken by Stites and was no longer available. However, the existence and authority of the original and reinstated corporation, that originally owned the property at issue in this suit and continues to provide the organizational structure for the current owners of that property, is not an issue in this appeal. For convenience, we will refer to the original and the reinstated corporation as Grand Crest. Further, the Stites corporation, Grand Crest Association, Inc., appears to be only a nominal party in this litigation.
[3] Lot 19 was first deeded by Grand Crest to Ralph E. Peacock in 1954, but he failed to record his deed. Palmer acquired his interest in lot 19 pursuant to a warranty deed from Grand Crest in 1975.
[4] The utility easement specifically appears only in the deeds from Grand Crest concerning lots 18 and 20. We do not address whether there is a similar utility easement regarding lot 19.
[5] Because we have decided the appeal on this basis, we do not address Grand Crest's argument based on the Marketable Title Act, 16 O.S.2011 §§ 71 through 85.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 67, 50 P.3d 224, FALCONHEAD PROPERTY OWNERS ASSOCIATION v. FREDRICKSON
Discussed
 2019 OK CIV APP 36, 444 P.3d 496, CIT BANK, N.A. v. HEIRS OF MCGEE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1938 OK 545, 83 P.2d 840, 183 Okla. 579, MAGNOLIA PETROLEUM CO. v. DRAUVER
Discussed
 1937 OK 473, 71 P.2d 759, 180 Okla. 477, SOUTHWEST PETROLEUM CO. v. LOGAN
Discussed at Length
 1952 OK 131, 242 P.2d 742, 206 Okla 240, G.A. NICHOLS INC., v. STODDARD
Discussed at Length
 1952 OK 309, 248 P.2d 596, 207 Okla 175, BLACKARD v. GOOD
Discussed
 1958 OK 55, 324 P.2d 543, MORTON v. CLEARVIEW HOMES
Discussed at Length
 1969 OK 87, 455 P.2d 49, CAYWOOD v. JANUARY
Discussed
 1971 OK 27, 483 P.2d 1145, BEATON v. PURE OIL COMPANY
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 1975 OK 115, 540 P.2d 562, STORY v. HEFNER
Discussed
 1942 OK 409, 133 P.2d 211, 191 Okla. 560, WILLIAMSON v. NEEDLES
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Cited
 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 136, Statute of Frauds
Cited
 15 O.S. 155, Intention of Parties Ascertained from Writing
Cited
 15 O.S. 158, Several Contracts Taken Together
Cited
Title 16. Conveyances
 Cite
Name
Level

 16 O.S. 4, Necessity of Writing and Signing - Veterans' Loans - Homestead - Joinder of Husband and Wife - Effect of Record for 10 Years
Cited
 16 O.S. 11, Receiver of Benefits Estopped
Cited
 16 O.S. 19, Warranty Deed - Conveyance of Interest - Implied Terms
Discussed
 16 O.S. 29, Estate in Fee Simple
Cited
 16 O.S. 71, Marketable Record Title Defined
Cited
Title 19. Counties and County Officers
 Cite
Name
Level

 19 O.S. 1001, Short Title
Cited
Title 60. Property
 Cite
Name
Level

 60 O.S. 8, Appurtenances Defined
Cited
 60 O.S. 49, Easements
Cited
 60 O.S. 851, Nature of Developments
Cited
 60 O.S. 852, Owners Association
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA